## REPUBLIC THRIFT SYNDICATE v. AT-KINSON. (No. 3318.)

Court of Civil Appeals of Texas. Amarillo. Nov. 20, 1929.

R. E. Stalcup, of Dalhart, and Barnard Cummings, of Denver, Colo., for appellant.

B. N. Richards, of Dalhart, for appellee.

RANDOLPH, J. This suit was filed in the district court of Dallam county by the plaintiff, Atkinson, against the Republic Thrift Syndicate. On trial before the court without the intervention of a jury, judgment was rendered in favor of Atkinson, from which judgment appeal has been taken to this court.

The plaintiff's petition charges a sale of a Hudson automobile to the defendant, for which the defendant paid the plaintiff in cash a part of the purchase price, but the balance, the sum of $954, the defendant has failed and refused to pay, and further that plaintiff's cause of action accrued "in said Dallam county, Texas; that on or about December 20, 1928, the defendant made and drew its check or draft, in said sum of $954, payable to plaintiff and the defendant's agent, J. O. Pierson, and forwarded the same to its agent, the First National Bank of Dalhart, Texas, which is located in Dallam county, Texas, and instructed said bank, in writing, to deliver said check or draft to plaintiff, and that said bank did deliver the same to the plaintiff, at Dalhart, Dallam county, Texas; that plaintiff placed the same in his bank, to be forwarded for collection, and that same was forwarded for collection to the Colorado National Bank of Denver, Colorado, on which bank the same was drawn, but that, when presented, the defendant stopped payment thereon, and has since failed and refused to pay the same, but, on the other hand, caused the same to be protested, at a further charge and cost of $4.75."

The defendant filed its answer, consisting of a general demurrer, general denial, and a special plea denying that the First National Bank of Dalhart, Tex., was ever its agent for any purpose whatever, and especially denying that said bank was its agent in the transaction mentioned in the plaintiff's petition, except as a depository for the mutual benefit of plaintiff and defendant, and only in the matters hereinafter set out; that on or about the 22d day of December, 1928, the said Pierson, mentioned in the plaintiff's pe-

tition, purchased from the plaintiff, on his own account, one Hudson automobile, same being purchased by said Pierson for his own exclusive use and benefit; that defendant had no connection with such purchase and was in no way concerned in same; that said Pierson paid the plaintiff the purchase price of same, save and except the sum of $954; that the plaintiff and said Pierson desired that this defendant, after such purchase was made, advance to said Pierson the sum of $954, so as to enable the plaintiff to obtain full payment of the purchase price for said car; that this defendant agreed to lend said sum of money to Pierson, conditioned that he, the said Pierson, would execute his note in the sum of $1,057.32, payable in installments, which sum represented the sum of $954, together with interest, insurance, and carrying charges for said sum, and would also execute his chattel mortgage on said car as security, and further conditioned that the plaintiff would have such automobile insured in some solvent insurance company in such amount and in such manner as would fully protect the defendant, as its interest might appear; that the conditions under which defendant undertook to pay the plaintiff the sum of $954, being the conditions above stated, were expressly stated to the plaintiff in a letter written by defendant to the plaintiff on December 20, 1928; that, in pursuance of the terms stated by the defendant, the defendant prepared a chattel mortgage covering said automobile and a note in the sum of $1,057.32, and sent same by mail to the First National Bank of Dalhart, requesting it to have said papers executed by Pierson and the mortgage acknowledged by him, and, when all the conditions were properly complied with, to deliver said draft in the sum of $954 to the said Pierson and the plaintiff; that at the same time the defendant wrote to the plaintiff, and informed him that the papers were in escrow in said bank, and instructed said Atkinson, the plaintiff herein, to have such papers duly executed, and to have the automobile insured in a sufficient amount to protect the interest of the defendant, after which said draft would be delivered; that said note and chattel mortgage were duly executed by Pierson and the note and mortgage returned to the defendant, but the plaintiff negligently failed to have the automobile insured as directed, but fraudulently procured the aforesaid draft herein sued on, and permitted the said Pierson to obtain possession of the automobile without having the same properly insured, as he was required and obligated to do, and which was a condition required before delivery to plaintiff of such draft; that the plaintiff permitted said Pierson to take, use, and control said car, and thereafter the said car was destroyed by fire without having any insurance on same.

Defendant then pleads in detail the failure of consideration upon which the draft was based, and also pleads estoppel against the plaintiff's claim for the sum of money which the draft represented, and that by reason of his recited contract the plaintiff is estopped from a recovery thereon.

The evidence introduced does not show that the taking out of insurance by the plaintiff was a condition precedent to the delivery of the draft to the plaintiff by the bank and delivery of the car by plaintiff to Pierson. The facts, substantially, are:

The plaintiff was an automobile dealer in the town of Dalhart. The defendant was a finance corporation in Denver, Colo. Pierson was a salesman for the defendant company, selling its bonds and stocks to the public on commission. He paid his own expenses and owned his car, in which he traveled. Pierson had become acquainted with the plaintiff, Atkinson, and had sold him bonds or stocks in the company. Later he entered into negotiations with Atkinson for the purchase of a Hudson car. He traded in his old car on the purchase price, and possibly some other considerations were given also, leaving a balance of $954, for which he executed his note to the plaintiff, Atkinson, and also executed a mortgage on the car to cover the said $954, plus interest. Atkinson, as he did not know Pierson, demanded that Pierson secure an indorser on his obligation.

In the meanwhile, Atkinson approached a man named Hazelton for the purpose of having him buy the note, which Hazelton agreed to do, but both parties required that Pierson furnish additional security. Hazelton proceeded to instruct an insurance agent to issue an insurance policy upon the car, securing his contemplated debt. Pierson, in answer to the requirement that he furnish additional security, stated that he thought his company would indorse with him. However, upon communicating with his company, it determined not to indorse for him, but proposed instead to advance the money necessary to pay all the balance of the purchase money coming to Atkinson on the car. In accordance with this proposition, it returned the note which Pierson had given to Atkinson, and also drew up a note and mortgage, which was sent by it to the bank at Dalhart, with a draft payable to Pierson and Atkinson, accompanied by the following letter:

"Republic Thrift Syndicate,
General Office: 1711 California Street, Denver, Colorado.

"December 20, 1928.

"First National Bank, Dalhart, Texas— Gentlemen: We enclose herewith unsigned note and chattel mortgage, both to be executed by Mr. J. O. Pierson, together with a check in the amount of $954.00, which is made payable to Mr. J. O. Pierson and Mr. D. C. Atkinson. We also enclose herewith note

payable to D. C. Atkinson signed by J. O. Pierson.

"Mr. Pierson and Mr. Atkinson will call on you, at which time please have Mr. Pierson sign the unsigned note and mortgage. After this is done, you may turn the note in favor of D. C. Atkinson over to Mr. Atkinson and Mr. Pierson, and they can cancel same. Also deliver to them the enclosed check.

"Please be sure that there is a witness to Mr. Pierson's signature on the mortgage, and then have a notary take his acknowledgment. The acknowledgment is provided on the back of the mortgage. Then please record this mortgage in your county. In some localities it is the usual practice to file mortgages; however, we wish this mortgage recorded and then mailed to us by the county recorder.

"Please mail direct to us the note in our favor, after Mr. Pierson has signed same. We are also enclosing herewith our check in the amount of $2.00, which we estimate will cover recording fees and other necessary expenses incurred by you in this matter. If this is not sufficient, please advise, and we will be glad to immediately remit to you for the balance.

"Thanking you in advance for your services in this matter, and extending kindest regards, we are, yours very truly, [Signed Republic Thrift Syndicate, by W. E. Phelps, Asst. Sec'y."

A like letter was written by defendant to Pierson on the same day, with the statement in it that it had written Atkinson, requesting him to take out insurance on the car to protect its interest. The letter written to Atkinson on the same day is as follows:

"Republic Thrift Syndicate,

"General Office: 1711 California Street, Denver, Colorado.

"December 20, 1928.

"Mr. D. C. Atkinson, Box No. 221, Dalhart, Texas—Dear Sir: To-day we are mailing to the First National Bank of Dalhart, Texas, a note and mortgage made out for an amount of $1,057.32. This note and mortgage are to be signed by Mr. J. O. Pierson.

"We are also sending the bank our check in the amount of $954.00, which is the amount we understand is due you from Mr. Pierson on the car. The check is made payable to Mr. Pierson and yourself.

"You and Mr. Pierson may call at the First National Bank of Dalhart, and Mr. Pierson can execute the note and mortgage and the bank can turn over the check to you. We are also sending the bank the note signed by Mr. Pierson, which is payable to you. This note will be delivered by the bank to Mr. Pierson, and same can be destroyed.

"We are of the opinion that the amount of the note signed by Mr. Pierson represents the balance of $954.00 plus insurance premium and interest. Please have an insurance policy written, insuring Mr. Pierson, covering this car for the amount you intended to write on completing this loan with Mr. Pierson, Advise us the amount of premium and we will send you check to cover. Please attach a mortgage rider to the policy, making same payable to 'Republic Thrift Syndicate, a Colorado corporation, as its interest may appear.'

"The arrangements as above mentioned, when completed, will give you the cash on this car, and no doubt this will be more satisfactory to you than to carry the papers, as you intended to do so.

"Will you please take care of the recording of Mr. Pierson's title papers, and any other papers necessary, as we are having the bank record the chattel mortgage signed by Mr. Pierson to us, and of course there will have to be some record in your county of the title to this car.

"Thanking you in advance for any services you may render us in the completion of this deal, we are, very sincerely yours, [Signed] Republic Thrift Syndicate, by W. E. Phelps, Asst. Sec'y."

Atkinson testified that he did not receive the letter addressed to him and did not read it until after he had gone with Pierson to the bank for Pierson to execute the note and mortgage, and that, when Pierson did execute the instrument, the bank then turned over to him the draft for $954.

■ Considering the language of the letters as stated above, we do not think that it establishes an intention on the part of the Republic Thrift Syndicate to require as a condition precedent that the car be insured for its benefit. The instruction to the bank was, when the note and mortgage were signed by Pierson and the mortgage acknowledged, to deliver to them the inclosed check. Nothing is said about requiring insurance on the car before the check or draft was turned over to Pierson and Atkinson. The language of the letter to Atkinson indicates that Pierson was to sign the note and mortgage and acknowledge the mortgage, and that the bank would then be authorized to turn the check over to Pierson and Atkinson. It is true that, in the letter to him, Atkinson is requested to secure insurance on the car; but it is not intimated that this insurance must be obtained before the trade could be closed. It is therefore clearly apparent that the defendant syndicate did not intend to require the insurance as a condition precedent.

"A 'condition precedent' is such as must happen or be performed before a right can accrue to enforce an obligation dependent upon the happening or performance thereof against another in favor of one claiming such right." Burns v. National Insurance Co. (Tex. Com. App.) 280 S. W. 762, 765.

"A condition precedent is created by use of such words as 'on condition,' 'provided,' 'so as,' 'if it happens,' or any like appropriate words which import that the vesting or continuance of the estate is to depend upon the observance of the provision named." 4 Elliott on Contracts, § 3872.

The rule obtains that, in the determination as to whether a particular provision amounts to a condition or not, the intention of the grantor controls. Frank v. Stratford-Handcock, 13 Wyo. 37, 77 P. 134, 67 L. R. A. 577, 110 Am. St. Rep. 963. This being true, a consideration of the instructions contained in the letters of defendant, when remitting the instruments to the bank and in notifying Pierson and Atkinson of the remittance, contains no language expressing or implying that the insurance was a condition precedent. 12 C. J. 409 B, notes 31–35; 4 Elliott on Contracts, §§ 3872–3874.

The evidence discloses that there was no consideration passing from the defendant Thrift Company to the plaintiff which placed any duty on the plaintiff to obtain insurance on the car to protect defendant's interest therein. However, the defendant contends that the plaintiff knew that it was expecting insurance as a condition of the loan, and that the plaintiff, having undertaken to obtain such insurance, his failure to obtain same estops him from a recovery on the draft.

In 2 Texas Jurisprudence, 394, the broad statement is made: "But irrespective of the consideration, an appointed agent, who undertakes the duties denied, becomes liable for negligent performance and his acts may bind the principal." This statement is supported by a reference to note, 4 A. L. R. 1196, which practically lays down the same broad rule. However, in examining into the cases cited in A. L. R., it will be seen that the rule is not so broad as stated. The cases given to support such holding are based upon an acceptance of the agency, upon a promise to perform or upon an executed contract between the principal and agent on the one part and a third party on the other.

It will be seen by an inspection of the record that, between the time of the attempt by the plaintiff to see the insurance agent and the destruction of the car by fire, there was no communication between the plaintiff and defendant, and no sufficient time for any communication; that such attempt to see the insurance agent was in answer to a request of the defendant that plaintiff do so; that it was not a duty of the plaintiff to obey the request, as he had no fund of the defendant in his hands out of which to pay the insurance, and there had been no previous dealings between the parties to warrant the defendant in requiring the plaintiff to pay such insurance out of his own funds. In the case of Vickery v. Lanier, 58 Ky. (1 Metc.) 133 (Ky. Ct. of App.), it is held that a simple request to insure, where no funds are provided, or where there have been no previous dealings between the parties, or no goods on consignment from which the party requested may reimburse himself, will not of itself devolve upon him the duty to insure or render him liable for failing to do so, neither will a subsequent effort to comply with such request have that effect. *There must be an undertaking or promise made at the time and intended as such by the parties.* (Italics ours.)

The conduct of the plaintiff in attempting to secure insurance, and afterwards forgetting to do so, or abandoning his efforts, does not make him guilty of active negligence; but it was purely a case of nonfeasance, for which he was not liable for the consequences. His attempt to obtain the insurance was gratuitous and such attempt does not constitute a promise on his part to perform the services requested. 2 C. J. § 372, note 21. The rule is laid down in 2 C. J. § 384: "If an agent acts gratuitously, he cannot be held liable for a mere nonfeasance, where he has never entered upon the undertaking, but if he does enter upon it, he may be held liable for *negligence* in the *performance* of the duties." (Emphasis ours.)

In the cases cited in 12 A. L. R. 222, there was a distinct promise to perform the duties which the agent gratuitously assumed. But we wish to assert here that the evidence does not in any respect show that in the matter of the request that the plaintiff obtain the insurance the relation of principal and agent between the parties at any time existed.

In the case of Dallas Hotel Co. v. Fox (Tex. Civ. App.) 196 S. W. 647, 649, this court laid down the rule that, where services were gratuitous, the party rendering the services should not be held for failing to do something which he was under no obligation to do.

We therefore approve the action of the trial court and here affirm the judgment rendered therein.