**DALLAS TITLE & GUARANTY COMPANY, Appellant,**

v.

**Melton JARRELL, d/b/a The Jarrell Company, Appellee.**

**No. 15454.**

Court of Civil Appeals of Texas.

Dallas.

Jan. 23, 1959.

Rehearing Denied Feb. 13, 1959.

Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., and John O. MacAyeal, Dallas, for appellant.

Burt Barr, Dallas, for appellee.

YOUNG, Justice.

The suit by the Jarrells, doing business as the Jarrell Company, against appellant Title Company was upon alleged breach of an oral promise to his damage; this defendant interposing in defense Section 2, Article 3995, Vernon's Annotated Civil Statutes (Statute of Frauds). Other defendants were Hubert McQueen, original promisor, and one H. L. Knopp. Upon trial to the Court, judgment was rendered against the Title Company for $444 and costs with timely appeal by the latter. Said judgment also recited a dismissal of Knopp from the suit, judgment by default against McQueen, together with the sum of $150 as attorney's fees.

On request of the Title Company the Court made findings of fact and conclusions of law, to-wit:

"That on the 26th day of November, 1956, the plaintiff sold to defendant McQueen one Mc-24 brown Hot Point dishwasher, one RGN Hot Point oven, one RKN–1 Hot Point burner, one MW–11 Hot Point disposal, for the total sum of $444.00. That said merchandise was delivered to the defendant on said date and was placed on Lot 18, Block 7, in Farmers Branch, Texas, same being 2948 Maydell.

"That on the 26th day of November, 1956, Mr. Buchanan, an officer of the Dallas Title Company told the plaintiff Jarrell that if he would deliver the merchandise that McQueen ordered to the job in Farmers Branch, Texas, that the Dallas Title Company would pay Jarrell at the time of the closing out of the house transaction. That in reliance upon said promise by Mr. Buchanan, the Jarrell Company delivered said equipment to McQueen at Farmers Branch, Texas. That the Dallas Title Company failed to pay Jarrell any money out of the closing of the house. I further find that plaintiff's attorney is not entitled to any attorney's fee against defendant, Dallas Title Company. Conclusions of Law. That the defendant McQueen has failed to pay any sum. That the Dallas Title Company agreed to see that Jarrell was paid upon Jarrell agreeing to deliver the equipment to the job for McQueen and that such constituted an original agreement or obligation by the Dallas Title Company, supported by valuable consideration, and not within the statute of fraud. That the delivery of the equipment by Jarrell to McQueen was after Buchanan, an officer of the Dallas Title Company, agreed to pay Jarrell out of the proceeds of the sale of the house, was found upon a new and distinct consideration between the parties and beneficial to the Dallas Title Company and is the original obligation of the Dallas Title Company and not within the statute of fraud. That Jarrell has performed his obligation and the defendant Dallas Title Company has received the benefits of same."

Judge Hyer made supplemental findings in a letter to the parties dated January 10, 1958, which, by agreement, is made a part of the record on appeal. Said letter in material part is here quoted: "Based upon the evidence adduced upon the trial, I am

inclined to think that the positiveness of plaintiff's and his witnesses' testimony that he furnished this merchandise for this new house in which defendant title company had, at least, the interest of seeing the matter smoothly closed and disposed of, causes me to find the facts in favor of plaintiff. Mr. Buchanan handles a great many matters of this kind. He can not be expected to remember every detail of every claim against every transaction. He testified that he knew the Jarrell claim was outstanding, he had it on his list to pay and would have paid this debt out of money from the proceeds of the sale if he had not understood that Knopp was paying it. He frankly admitted that he was not clear on this particular transaction and that he couldn't remember any particular conversation, that he talked to one of them, but had no independent recollection of certain facts. I feel that the plaintiff, a tradesman, is entitled to judgment against defendant Dallas Title Company from the peculiar evidence in this case and the preponderance of it being in his favor. As far as the law is concerned, I am convinced that the Statute of Frauds does not apply and that even the Law of Guaranty is not entirely applicable. There was a simple oral agreement on the part of defendent title company, acting through its agent and officer, it seems to me, to pay out of funds that it had the amount of plaintiff's debt and protect him to that extent. Because of a misunderstanding, about which Mr. Buchanan is not too clear, that someone else would pay this item, Mr. Buchanan seeks to free the title company of liability for doing what it originally set out to do. The testimony of the two Jarrells is very strong to the effect that they were still looking to Dallas Title Company under their oral agreement. As far as attorney's fees are concerned, I have read your authorities and found one of my own that convinces me that Dallas Title Company would not be liable in a suit of this kind, where they received no benefit whatever from the material furnished, for attorney's fees, and so I find that plaintiff shall not recover attorney's fees in this matter against them, but only against Hubert McQueen."

Plaintiff was a retail merchant dealing in kitchen fixtures and equipment, and defendant McQueen a builder of furnished homes; by March 7, 1957, having completed and sold one on 2948 Maydell street, Farmers Branch, Dallas County; the purchasers requiring a title policy and the Dallas Loan & Mortgage Company through Knopp financing the cost of construction for builder McQueen.[1]

A further detail of material facts is in order. The merchandise sold by the Jarrells (Melton and Buddy) to McQueen were Hot Point dishwasher, surface units and burners, disposal equipment and oven; Melton testifying that on account of previous unsatisfactory dealing with McQueen they had thereafter "got more or less a guarantee from the title company that they would pay on closing"; of having a conversation with Fred Buchanan, Vice-President and attorney for the Title Company, before shipping the particular merchandise and getting the latter's assurance "that we would get our money when the house was closed". That he then delivered the merchandise to McQueen, sending bill or invoice direct to Dallas Title; the procedure rendering unnecessary a filing of mechanic's lien. Mr. Buchanan testified to a receipt of the Jarrell invoice, placing it on his list of unpaid bills; that all other bills on the list were paid except that of plaintiffs. His reasons for such omission was this: that at time of closing, about March 7, 1957, he had 'phoned plaintiff and was told by Buddy Jarrell that they were releasing the title company from pay-

---

1. Appellant states in the brief that one McCloud and wife were such purchasers, it issuing an owner's (title) policy to him along with a mortgage policy to the Equitable Assurance Society of America; also that such defendant was a Texas Corporation organized to write various types of insurance policies in connection with land transactions; appellees objecting to the foregoing on ground that such factual matter was entirely outside the record.

ment; that they had it charged to Mr. Knopp, and would get their money from him; whereupon, he, Buchanan, circled the item as off his list with notation "paid by Dallas Loan & Mortgage Company". And that but for the above telephone conversation with Jarrell he would have withheld the amount due plaintiffs out of proceeds of the sale as he did with the bills of other creditors. The Jarrells denied emphatically the testimony just related; saying that if Buchanan 'phoned either of them it was with respect to "another deal" with Knopp; that they had continued to look to the Title Company for their money on closing according to the earlier understanding, 'phoning Buchanan's office from time to time. Here it will be noted that the trial court rejected the testimony of Mr. Buchanan just related; finding instead that "the testimony of the two Jarrells is very strong to the effect that they were still looking to Dallas Title Company under their original agreement."

Appellant's points of appeal are as follows: The Court's error (1) in failing to sustain defendant's exception that plaintiff's petition failed to state a cause of action against Dallas Title & Guaranty Company; (2) in permitting plaintiff to introduce testimony regarding the alleged oral agreement between Dallas Title & Guaranty Company and the plaintiff, and its basing judgment thereon, since this oral agreement, if any there was, was within the Statute of Frauds; (3) in finding the alleged agreement by Dallas Title & Guaranty Company to pay plaintiff for the equipment delivered to McQueen was supported by a valuable consideration. Article 3995, V.A.C.S., provides in part:

"No action shall be brought in any court in any of the following cases, unless the promise or agreement upon which such action shall be brought, or some memorandum thereof, shall be in writing and signed by the party to be charged therewith or by some person by him thereunto lawfully authorized: * * *

"2. To charge any person upon a promise to answer for the debt, default or miscarriage of another * * *".

It is appellant's position generally that all testimony adduced favorable to plaintiffs merely tended to establish an oral promise by the Title Company to answer for the debt of McQueen; citing Higginbotham-Bartlett Co. v. Dickey, Tex.Civ.App., 27 S.W.2d 248, to effect that a special promise within the Statute to answer for the debt of another may be made *before* or simultaneously *with* the creation of the principal obligation, and may be offered as an inducement to the creditor to enter into a contract with the principal debtor. Otherwise stated it is argued that the particular understanding was no more than an assurance by the Title Company to "protect" plaintiffs on the closing or "see that they got their money"; and accordingly a collateral promise, not enforcible under the Statute. 20a Tex.Jur. (Statute of Fraud) p. 312. On the other hand it is the testimony of Mr. Buchanan that he would have withheld the amount due plaintiff out of the money in his hands at closing but for the telephone conversation already related; disregarded by the trial court in passing upon weight and value of the testimony.

Somewhat analogous to the instant situation is Hacker v. Whitney Dam Lumber & Construction Co., Tex.Civ.App., 225 S.W.2d 225, 226 (writ Ref). There the contractor became financially involved during course of construction of houses; the owner telling the lumber company to continue the furnishing of lumber to them; that he had on hand funds owing to the contractors and would hold out enough money to pay the lumber company on completion of the job. The oral agreement was held as not within the Statute; the Waco Court holding in part: "In passing upon whether or not an oral promise or agreement of a property owner to pay for materials furnished to a contractor constitutes a promise to answer for the debt, default or miscarriage of another within the meaning of the Statute of

Frauds it is proper for the courts to consider the circumstances surrounding the transaction out of which such promise or agreement arises. Pertinent thereto it is said in 99 A.L.R. p. 93: 'While, as in all cases involving promises by an owner or other interested person to pay for work or labor to be furnished to a contractor, the circumstances of the transaction are an all-important consideration, the courts seem inclined to hold that where the promise is confined to payment out of funds in the promisor's hands owing to the contractor, it is not within the Statute of Frauds'.' "

 But appellant asserts an entire lack of consideration here and so found by the trial court; citing the general rule, that: the kind of benefit that takes the promise out of the Statute is one which the promisor receives or expects when he makes the promise, resulting in an original, independent undertaking by the promisor. The consideration for the promise must be a direct benefit to the promisor and the primary object of making the promise, as distinguished from a benefit which is merely incidental, indirect or remote. 37 C.J.S. Frauds, Statute of § 21, p. 531; 49 Am.Jur. §§ 74, 75, pp. 426–428. Sufficient consideration may be inferred from the benefit to the Title Company in supervising payment of all outstanding bills for construction from the proceeds of sale on closing, in connection with its issuance of title policy; thus protecting itself from possibility of future mechanic's liens.

However, even assuming the services of this defendant to have been gratuitously rendered, still for another reason the Statute of Frauds is viewed as inapplicable to the facts and circumstances of this case. Admittedly the role of the Title Company here was that of an agency for collection of these listed and unpaid bills of suppliers, tradesmen, laborers, materialmen, etc. "If the agency is gratuitous, the agent will not be liable for a nonfeasance. But if the agent once enters upon the execution of the business and any loss result from his negligence or failure to carry out his instructions, he may be held responsible; and this notwithstanding a lack of consideration." 2 C.J. p. 717; 2 C.J.S. Agency, Consideration § 19, p. 1043. See also Radford Grocery Co. v. Estelline State Bank, Tex.Civ.App., 66 S.W.2d 1110; Republic Thrift Syndicate v. Atkinson, Tex.Civ.App., 21 S.W.2d 1102; Boyd v. Eikenberry, Tex.Civ.App., 99 S.W. 2d 701 (Modified by Supreme Court), 132 Tex. 408, 122 S.W.2d 1045.

All points on appeal are accordingly overruled and judgment of the trial court is affirmed.