FRANK MCGAVOCK *v.* VIRGINIA-CAROLINA CHEMICAL
COMPANY.

(*Nashville.* December Term, 1904.)

1. **MINING LEASES.** Lessee cannot terminate, because min-
able quantity is found in pockets and not in stratified lay-
ers, when.

A lease of right to mine and take phosphate rock from the les-
sor's land, with the right in the lessee to terminate the lease
upon exhaustion of the minable quantity of said rock, cannot be
abandoned by the lessee merely because the rock is found in
pockets and not in stratified layers, if the rock is sufficient in
quantity in either form, especially where the lessee had made
repeated examinations and tests of the property before the
lease contract was made, and was familiar with, and better
able to judge of, the rock than the lessor.

2. **SAME.** Quality of ore must be referred to experts as provid-
ed in contract as condition precedent to termination of lease
by lessee.

Under a lease of the right to mine and take phosphate rock from
the lessor's land, with a provision that, on exhaustion of the
rock of a certain quality, the lessee may terminate the lease,
and if the quality of rock should, at any time, be called to ques-
tion by the lessee, the matter should be referred to and set-
tled by certain referees; the lessee has no right to terminate
the lease contract on the ground of inferiority of the rock un-
til the inferiority has been tested by the experts named in the
contracts, as a condition precedent to the termination of the
lease contract by the lessee.

Cases cited and approved: Wadsworth v. Smith, L. R., 6 Q. B.,
332; Hanley v. Walker, 79 Mich., 607.

Cases cited and distinguished; Manufacturing Co. v. Collier, 91
Tenn., 525; Hamilton v. Ins. ~nce Co., 136 U. S., 242.

FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —JOHN ALLISON, Chancellor.

M. H. MEEKS and M. B. HOWELL, for complainant.

JOHN A. PITTS, J. C. BRADFORD and FIRMAN SMITH, for defendant.

MR. JUSTICE WILKES delivered the opinion of the Court.

Plaintiff made a lease upon his land, to run for twenty years, to the defendant company, with a right of renewal. The terms of the lease gave the defendant exclusive right to mine and take phosphate rock from the land, except certain residence portions, and to construct roads, tramways, buildings, machinery, etc. The company agreed to pay a royalty to the lessor, of twenty-five cents per ton, on all phosphate rock mined and removed from the premises which contained not less than sixty-five per cent of bone phosphate, and not more than four and one-half per cent of oxide of iron and alumina. The minimum, however, was to be $4,500 per annum, or $1,125 per quarter; and, in case mining was suspended,

McGavock v. Chemical Co.

or the royalty on the rock mined should not in any quarter   equal the installment of $1,125, it was nevertheless to be paid.

The farm was incumbered by a mortgage debt of $22,000, due to one Alex. Perry.   By one of the sections of the contract, it was provided that the royalty to be paid by the said Virginia-Carolina Chemical Company should be applied as follows:   (1) To the taxes accrued and lawfully due upon the leased premises; (2) to the interest accruing and due upon the mortgage debt; and (3) $2,500 per year upon the principal of said mortgage debt for five years; said payments to be made by the lessee directly to the mortgagee; the balance of said royalty during the next five years to be paid to the lessor or his order.   The lessee, Virginia-Carolina Chemical Company, agreed to protect the lessor against foreclosure of said mortgage for and during said period of five years, for the balance due thereon, after applying the payments as provided, in case rock of the standard quality, as described in the contract, should not sooner become exhausted; and in case such rock should become exhausted within that period, and the lessee should avail itself of the option given to terminate the lease on that account, then in that event the lessee agreed to give to the lessor twelve months from such termination of the lease in which to arrange for the payment of such mortgage debt.

The company took up the mortgage upon the land, and had it and the notes of McGavock transferred to it.

It then claimed that the rock was exhausted, and that it had a right to cancel the mining contract, and to foreclose the mortgage which had been transferred to it.

Previous to this it had mined and shipped 1,651 tons of rock. Thereupon this bill was filed to enjoin the company from foreclosing the mortgage, to enforce the terms of the contract, and to have damages for its breach. ·

The controversy as to whether the contract had been breached, or not, was made by the court of chancery appeals to turn upon the proper construction of one provision of the lease contract.

This provision is in the following words and figures:

"In case the quality of the rock being at any time called in question by the lessee, the same shall be referred to and settled by one of the following referees, · in the order herein named—to wit: Prof. W. H. Hollinshead, · of Vanderbilt University; Shepard Laboratory, of Charleston, South Carolina; and Pratt Laboratory, of Atlanta, Georgia—the expense of such examination and test ·to be paid by lessor and lessee in equal parts, and such test to be conclusive upon both parties. The lessee shall not be required to pay for any rock which shall not come up to the standard above prescribed, when the quality shall have been tested in the manner above stated; and if, at any time, the rock upon said premises, coming up to said standard, shall become ex-· hausted, the said lessee shall have the right to terminate this lease and all further obligations resting upon him

under this contract, except as hereinafter stated in reference to the mortgage hereinafter mentioned."

The controlling finding of the court of chancery appeals, construing this provision of the contract, is in these words, taken from the opinion on the motion to rehear:

"In other words, the essential and fundamental predicate of our opinion was our finding that the phosphate rock upon the premises of complainant had not been exhausted, with respect to its minable quantity, and its quality had not been shown, in the way provided for by the contract, to be of a grade not in accord with the stipulations of the contract, and that, until this is shown by an actual test, by analyzing in the way and mode provided for in the contract, the defendant had no right to abandon it. . . . We must be permitted to say that, in our opinion, the learned counsel of petitioner, the defendant company, misapprehends to some extent, and to a material extent, the basis and underlying fact upon which we decided this case. As stated, the fundamental predicate of our opinion was and is that the proof shows that there is phosphate rock on the premises of complainant, in minable quantities, and that the quality of the rock has not been shown to be inferior in grade to that specified in the contract, in the manner and under the test provided for in the contract, and that until it is ascertained to be of an inferior grade, in the way and manner thus provided in the con-

tract, the defendant company has no right to abandon the contract."

Counsel for the company thus state their objection to the holding of the court of chancery appeals:

"Our first objection to the conclusions of the court of chancery appeals is that it decides that the Virginia-Carolina Chemical Company could not abandon the contract until after the quality of the rock on the premises had been submitted for analysis to the referees named in the contract, and its quality had been determined to be inferior to that prescribed in the contract. In other words, the court holds that the contract prescribes a tribunal for the determination of the question of quality, and, until that tribunal acts, the lessee could not put an end to the contract, although it otherwise appeared that the rock was exhausted.

In other words, the conclusion of the court of chancery appeals is that the inferior quality of the rock can be determined in no other way than that prescribed in the contract, namely, by submitting the rock to a test by the chemical experts named therein, and that the termination of the contract by the lessee must await the determination by the referees of the question of the quality of the rock.

"We think this conclusion is erroneous, for several reasons. This is not a condition precedent, but is a collateral stipulation, merely. The Virginia-Carolina Chemical Company was not obliged to resort to this method of determining the quality of the rock, but, if

the quality proved to be deficient, and that fact was ascertained in any other way, the lessee had the right to terminate the contract, and to establish the fact by proof *aliunde*."

Inasmuch as the court of chancery appeals have not found the fact whether minable rock of requisite quality exists on the land to satisfy the requirements of the contract, and have stated their inability to do so, and have based their action upon their construction of the contract, the question, so far as it is presented to us, is whether their construction is the proper one; and, if so, have they made the proper decree thereon?

The question before us is therefore brought within narrow limits.

There can be no question, under the finding of the court of chancery appeals, but that a sufficient quantity of minable rock exists upon the land to satisfy the contract, and the only question is whether that sufficiency is of the prescribed quality.

We are of opinion that the fact that the ore is found in pockets, and not in stratified layers, and may therefore be more difficult to mine, can in no wise affect the merits of the controversy, if the ore is sufficient in quantity in either form; and especially is this so when it appears that the company made repeated examinations and tests of the property at different places before they made the lease contract, and were as familiar with, and better able to judge of, the ore than complainant was.

So, that the question recurs, is the ore of the quality

stipulated for in the contract, and can this fact be ascertained in any other way than that prescribed by the contract?

The clause in the contract which raises the controversy contains two provisions, both for the benefit of the lessee—one fixing the terms on which the lease may be put an end to, and the other providing that for rock of an inferior quality the lessee shall not be required to pay—but both are dependent upon the fact of inferiority in the rock; the latter relating alone to the rock already mined, and for which pay is demanded, while the former goes further, and touches upon the quality of the rock, whether mined or not. One provision relieves the company from paying for inferior rock, although it has been mined; and the other relieves it from continuing to mine if the rock mined and to be mined is inferior, so that the quantity and quality cannot be obtained.

The determinative finding of the court of chancery appeals is that the rock exists in sufficient quantity, but that its quality has never been tested by the parties in the mode called for by the contract; and, until thus tested, and, by the test prescribed, discovered to be of an inferior grade, and not up to the quality called for by the contract, the defendant company had no right to terminate the contract because of any assumed inferior quality of the rock, or because such inferiority appeared otherwise than by such test.

In other words, the company had no right to terminate the contract on the ground of inferior rock until

that inferiority was fairly tested and found to exist by the experts named in the contract, and in the order in which they are named.

The court of chancery appeals therefore reversed the holding of the chancellor, and remanded the cause for the purpose of enabling operations to be pursued on this farm in mining rock in accordance with the terms of the contract, and directing that rock properly selected and prepared should, in the presence of both parties, be submitted to the tests of the experts named in the contract, in the order in which they are named, or such other chemists as may be agreed on, and until the inferiority of the rock should be thus demonstrated, and that rock of the proper grade and in minable quantities be demonstrated not to exist, the company should continue to be charged with the royalty provided by the contract, to be credited on the mortgage held by the company.

We are of opinion that the court of chancery appeals is correct in its disposition of the matter.

The parties, when entering into this contract, foresaw that a question might arise as to the quality of the rock which the mines were producing. In advance of such question, and in order to settle the same, it was agreed that the matter of quality, if called in question by the lessee, should be settled by one of certain experts, naming them, and the order in which they were to act.

The case is not the same as *Cole Mfg. Co.* v. *Collier*, 91 Tenn., 525, 19 S. W., 672, 30 Am. St. Rep., 898, nor *Hamilton* v. *Ins. Co.*, 136 U. S., 242, 10 Sup. Ct., 945,

34 L. Ed., 419, in which it was held, in substance, in insurance contracts, that in case of a breach the parties would submit their differences in adjustment to arbitration, and in which the court held that, unless so expressly provided, the agreement to arbitrate was not a condition precedent to a right to sue.

The stipulation in the present contract is not for a submission to arbitration of the rights of the parties in consequence of a breach of a contract, but it is a stipulation naming experts, who, after tests applied, shall determine whether the lessee has a right to refuse to carry on his contract, and this depends upon the result of their tests.

It more nearly assimilates itself to the case where parties, in advance, agree to refer any matter to the decision of an architect, engineer, or other expert, and name the person to decide the question.

In all such cases it is uniformly held that the submission provided for must be carried out, the test applied, and the result reached as a condition precedent to do the thing about which controversy exists. 2 Am. and Eng. Ency. Law, p. 582, and notes; *Wadsworth* v. *Smith,* L. R., 6 Q. B., 332; *Hanley* v. *Walker,* 79 Mich., 607, 45 N. W., 57, 8 L. R. A., 207; 3 Elliott on Railroads, 1059.

This view of the case is not only based upon authority, but upon reason.

The parties, in advance, agree as to the manner in which the tests are to be made, and by whom.

McGavock **v.** Chemical Co.

It affords to each the assurance of expert evidence, which they evidently deem most trustworthy and reliable.

Neither has a right to substitute a different test or different persons.

It is to be presumed that the parties have selected the best tests. Whether they have, or not, they have agreed upon them, and neither party can depart from this agreement.

The wisdom of having such a tribunal is exemplied in this case, in which the court of chancery appeals report that after examining a vast mass of testimony, contained in four volumes, of many hundred pages, they are unable to decide the disputed question of quality.

The mode pointed out in the contract, and which that court directs to be observed, is plain and simple, and of all means most easily put in practice, and is in accord with the contract.

We are of opinion, therefore, that the holding of the court of chancery appeals is entirely and eminently correct, and their decree is affirmed.