## BUTLER v. JENKINS OIL CORPORATION et al.
### No. 2911.

Court of Civil Appeals of Texas. El Paso.
Jan. 4, 1934.

Rehearing Denied Feb. 1, 1934.

Second Motion for Rehearing Denied
Feb. 21, 1934.

Paul G. Brown, of Henderson, for appellant.

Hamilton & Hamilton, Saner, Saner & Jack, and J. W. Madden, Jr., all of Dallas, and Vinson, Elkins, Sweeton & Weems, of Houston, for appellees.

WALTHALL, Justice.

Plaintiffs, Jenkins Oil Corporation and W. B. Hamilton, brought this suit against the Crown Central Petroleum Corporation to recover the sum of $1,983.80 alleged to be due for 1/32 of 7/8 of the gross production of oil produced from a thirty-acre lease, between the dates of September 21, 1931, and August 31, 1932, inclusive. Plaintiffs operated the lease during said period of time and delivered all the oil produced therefrom to defendant Crown Central Petroleum Corporation, and defendant corporation had withheld accounting to plaintiffs for the 1/32 of the 7/8 of the oil produced, the value of which was the sum of $1,983.80. In the suit plaintiffs made R. G. (Bob) Butler a party to the suit, alleging that Butler was claiming the right to be paid said

sum of money under the terms of a certain contract or assignment from Roy Jenkins to him (Butler) as to said $\frac{1}{32}$ of $\frac{7}{8}$ interest in said oil production, of date December 22, 1930, covering said thirty-acre lease. At the time of this suit plaintiffs had acquired the Roy Jenkins interest in said lease.

The defendant Crown Central Petroleum Corporation in its answer admitted that it had purchased the oil from the lease in question during said period of time and had withheld payment for said $\frac{1}{32}$ of $\frac{7}{8}$ of said oil produced from said lease amounting to said sum of $1,983.80, for the reason that plaintiffs and said Butler were each contending that they were entitled to payment for said interest, admitted that it held the money as debtor and was ready and willing to pay it as the court might determine to be entitled to receive it, and in its pleading tendered said sum of money to the court to be paid as the court may direct; it alleged the employment of attorneys to represent it and file its answer, and prayed that it be allowed a reasonable charge for such services, stating said sum, and that it go hence without day and recover its costs.

The real contention in the suit was between the plaintiffs on the one hand, and defendant Butler on the other. The undisputed facts show the following: On December 22, 1930, defendant Butler owned an undivided $\frac{1}{4}$ interest in the oil and gas lease on said thirty-acre tract of land. On that date he executed and delivered to Roy Jenkins an assignment covering said undivided $\frac{1}{4}$ interest, and contemporaneously therewith, and as a part of the consideration therefor, Roy Jenkins executed and delivered back to defendant Butler an assignment containing the following provision:

"The undersigned Roy Jenkins, the present owner of said lease and all rights thereunder incident thereto, does hereby bargain, sell, transfer, assign and convey all rights, titles and interest of the original lessee and present owner in and to said lease and rights thereunder, insofar as it covers a one-sixteenth overriding royalty out of the leaseholder's seven-eighths, said one-sixteenth overriding royalty to cover the oil, gas and other minerals in and under all of the above described thirty acre tract of land, more or less, to be paid on such basis as long as each well upon said lease produces one hundred ninety barrels, or more per day, to be based upon an average of fifteen days.

"In the event said well or wells produce less than one hundred ninety barrels per day each to be based upon an average of fifteen days

then said overriding royalty shall be one thirty-second interest, the above royalty interest to be computed on each well separately."

The assignment then provides that oil, gas, and other minerals, equivalent to overriding interest to be delivered to the pipe lines at the well or wells to which said Jenkins, his heirs and assigns, may connect such wells, free of costs to Butler.

The contention in the suit seems to grow out of the construction to be given the words used in the assignment "produces" and "produce"; that is, if under the assignment Butler was entitled to receive a full $\frac{1}{16}$ of $\frac{7}{8}$ of the production from said lease during the period of time in controversy, then Butler was entitled to be paid for the $\frac{1}{32}$ of the money withheld by the defendant Crown Central Petroleum Corporation. If Butler was to receive $\frac{1}{32}$ of $\frac{7}{8}$ of the oil and gas produced during said period of time, the plaintiffs were entitled to be paid for the $\frac{1}{32}$ of $\frac{7}{8}$ of the money withheld and put in controversy to the suit.

Plaintiffs' contention was that from September 21, 1931, to August 31, 1932, none of the four wells on the thirty-acre lease had produced as much as 190 barrels per day, and that under orders issued by the commanding officer of the military in charge of said field, acting under the orders of the Governor of Texas, and under the regulations of the Railroad Commission of Texas, none of said wells had been permitted to produce as much as 190 barrels of oil per day.

The respective parties, by lengthy supplemental pleadings, pleaded the meaning that should be given the words "produces" and "produce"; Butler contending that at the time the assignment was executed the parties discussed orally and had in mind and intended to use the word "produces" as meaning the amount the well could or had the capacity to produce.

Appellees contend, in brief, that the terms used in the assignment are definite, unambiguous, and properly construed and, in the absence of fraud, accident, or mistake, provides that the royalty interest is determined by the amount of oil and gas actually produced from each well computed separately and not by what the well could produce or had the capacity to produce.

The trial court, in sustaining plaintiffs' exceptions, eliminated the facts and circumstances pleaded attending the execution of the assignment, and to that portion pleading ambiguity in the use of the terms "produces" and "produce"; the court sustained defendant

Butler's exception to the portions of plaintiffs' pleading setting up the orders of the Railroad Commission and the orders issued under martial law, thus limiting the production of oil to less than 190 barrels per day per well.

The case was tried without a jury. The court found, as stated in the judgment, that during the two periods stated the wells each produced 190 barrels or more per day based on an average of fifteen days, and Butler was entitled to receive a royalty of $\frac{1}{16}$ of $\frac{7}{8}$ of the production during the said periods, and to be paid $\frac{1}{32}$ of $\frac{7}{8}$ of said royalty; that he has received and was paid, of said royalty, $\frac{1}{32}$ of $\frac{7}{8}$, and is entitled to recover the additional $\frac{1}{32}$ of $\frac{7}{8}$ royalty for said period the amount aggregating the sum of $149.57.

The court further found that with the two exceptions stated each and all of said wells, during the period referred to produced less than 190 barrels per day on the basis fixed by the assignment, and that Butler was entitled to receive only $\frac{1}{32}$ of $\frac{7}{8}$ royalty covering said production, already paid him, and that plaintiffs are entitled to recover the respective amounts withheld and unpaid by the Crown Central Petroleum Corporation said amounts covering $\frac{1}{32}$ of $\frac{7}{8}$ of said production and aggregating the sum of $1834.23. The court entered judgment for plaintiffs and defendant in said proportions, against defendant Crown Central Petroleum Corporation. The court allowed the defendant corporation an attorney's fee of $150 to be paid as costs, and that $\frac{1}{10}$ of said fee be deducted from the amount recovered by plaintiffs and $\frac{9}{10}$ from the amount recovered by defendant Butler.

Defendant Butler has duly perfected an appeal to this court.

## Opinion.

◼ Appellees' objections to a consideration by this court of appellant's first three assignments must be sustained. The assignments are plainly multifarious and too general to invoke consideration on appeal, in that each assignment respectively submits error in sustaining a number of exceptions, namely, exceptions from a to g, a to e, and a, referring to and embracing different paragraphs of plaintiffs' supplemental petition to Butler's answer and cross-action. An assignment is "multifarious" when it embraces more than one specific ground of error or when it attempts to attack several distinct and separate errors or rulings of the court. McMullen v. Parker et ux. (Tex. Civ. App.) 45 S.W.(2d) 1011; International-Great Northern Ry. Co. v. Miner (Tex. Civ. App.) 54 S.W. (2d) 216; 3 Tex. Jurisprudence, p. 855, § 597; Karotkin Furniture Co. v. Decker (Tex. Com. App.) 50 S.W.(2d) 795; McMath Co. v. Staten (Tex. Civ. App.) 60 S.W.(2d) 290; Universal Life & Accident Ins. Co. v. Armstrong (Tex. Civ. App.) 63 S.W.(2d) 225.

◼ Appellant's fourth assignment submitting error in allowing defendant Crown Central Petroleum Corporation an attorney's fee for answering in the suit, defendant never having paid into the registry of the court the $1,983.80 which it admitted it owed to either plaintiffs or defendant Butler, the assignment, in our opinion, does not present error, certainly not reversible error.

Defendant corporation fully answered in the case admitting liability for the amount in controversy to the party to whom the court should direct its payment, states the employment of an attorney to file its answer, and says, "Defendant here now tenders and pays into court the sum of $1983.80," and asks the court to pay same to the lawful owners, etc. The court allowed defendant an attorney fee of $150.

We have not found in the record that the money was not actually paid into the registry of the court. The record shows an agreement between the parties to the suit of certain admitted facts, among them that defendant corporation admits that it owes the amount of money it withheld "and is ready to pay same subject to the order of the court." We assume, however, for the purpose of the question presented, that the money was not actually paid into court.

In this case the defendant Crown Central Petroleum Corporation, a pipe line corporation, was the holder or depository of a sum of money claimed respectively by plaintiffs and defendant Butler. The corporation, while made a defendant, was really not a party at interest in the case; it had no issue of its own to litigate; it simply withheld the money in litigation to be paid the litigants under the direction of the court. Its position in the case was somewhat in the nature of a stakeholder or garnishee. We know of no statute or rule of law in this state that makes it the duty of one occupying the position in the case of the defendant corporation, to actually deposit the money held by it into the depository of the court, and we think it owes no duty to do so unless the court so directs. The court apparently regarded the defendant corporation's answer only as an admission of indebtedness and entered judgment

against it rather than require the deposit of the money and direct its distribution in the proportions in the judgment. We think the defendant corporation was entitled to be allowed a reasonable attorney fee by reason alone of its position in the case, and its failure to actually deposit the money it held would not of itself defeat it of its right to the attorney fee allowed by the court.

Attached to appellees' petition is a statement made an exhibit, "Exhibit A," on the trial, of all oil run from the lease involved in this controversy; also two witnesses testified to the effect that the lease was under their active supervision and management and that the wells, as shown by their daily reports showing production and running of all oil to pipe line, were operated to produce the daily allowable amount from each well by the Railroad Commission orders. As we construe the evidence of the witness Hamilton, the books, records, run tickets, gauges, etc., were all produced in court, from which the actual production of the oil each day, and upon which payment was made for the oil produced, could be ascertained. It was agreed on the trial by all the parties that Exhibit A attached to appellees' petition "is a correct statement of the oil produced from the lease in controversy, and correctly shows the amount of oil accruing in favor of the interests in controversy in this suit, that is, the 1/32nd of 7/8ths working interest; and that the balance of the amount due by the Crown Central Petroleum Company covering said interest is the sum of $1983.83, covering the period in controversy." The findings of the court, while not referring to the exhibit, correspond with the statements of the oil run and the amount of money due by the defendant corporation as in the exhibit. For reasons stated, we think we need not discuss the sufficiency of the evidence to sustain the court's judgment as to the oil run and the amount of money due, as submitted in appellant's fifth and sixth assignments.

■■ Appellant complains that the court taxed 9/10 of the costs to him and 1/10 of the costs to appellees.

Article 2056, of the Statutes provides: "The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."

Appellant claimed the entire amount in controversy was due him, and made no tender of any amount to appellees. The taxing of costs in a case is largely a matter of discretion by the trial court. Appellees'.

right to costs appears the more clearly where he recovers a large portion of the property in controversy. There was no error in adjudging the costs. 11 Texas Jurisprudence, § 4, pp. 231, 232, and the notes thereunder.

There is no error in the record that this court may consider.

The case is affirmed.

HIGGINS, Justice (concurring).

In my opinion appellant's first three assignments should be considered. The action of the court in sustaining the exceptions, if erroneous, presents a matter of fundamental error. I am of the further opinion the assignment from Jenkins back to Butler is plain and unambiguous and the exceptions in question were properly sustained. I, therefore, concur in the affirmance of the judgment.

On Motion for Rehearing.

WALTHALL, Justice.

■ In the opinion this court did not consider appellant's first three assignments of error for the reason there indicated. Appellant assigns error to our failure to consider the assignments. We have concluded to consider the assignments.

In our statement of the case, in the opinion, we quoted a portion of the assignment contract of date December 22, 1930, executed by Roy Jenkins to appellant Butler, and here refer to that portion of the assignment without requoting it here.

Butler makes the contention that at the time of the execution of the assignment the parties used the terms "produces" and "produce" as used in the assignment in the sense that the assignee, Butler, was entitled to receive a 1/16 overriding royalty from each well so long as each well could and would produce, that is, had the capacity to produce, 190 barrels of oil per day, based on an average of 15 days, when properly equipped, etc. For the purpose of showing that the quoted provision of the assignment using the terms "produces" and "produce" was used in the sense contended by Butler, Butler pleaded what he alleged to be certain facts, circumstances, conversation, and understanding of the parties to the assignment at the time of its execution; and alleged that the terms "produces" and "produce" were ambiguous and susceptible of these two interpretations, asserted by the parties to this suit. Butler pleaded that each of the four wells, within the times involved, had been

capable of and could and would have produced more than 190 barrels of oil per day within the meaning of the terms of said assignment as interpreted by the parties at the time of its execution.

Plaintiffs presented a number of special exceptions to that portion of Butler's pleading wherein they set out the facts and circumstances attending the execution of the assignment by which Butler undertook to show the meaning the parties attached to the terms "produces" and "produce."

The special exceptions referred to in the assignment are, in effect: (a) Butler's allegations are irrelevant and immaterial; (b) the written contract assignment and conveyance are plain and unambiguous, and Butler's pleading is an attempt to contradict, vary, or destroy the legal effect of such contract by parol; (c) all of such alleged parol representations, statements, understandings, etc., made prior to or contemporaneous with the writings, were merged in the writings, and cannot, by allegations or proof, contradict the terms of the writing; (d) (in legal effect same as c); (e) what the parties understood as to the effect of their contract and assignment, etc., are irrelevant, immaterial, are merely the conclusion of the pleader, and no facts are alleged to show whether such understanding was the secret thought of Butler, or whether there were actual representations made or not; (f) the allegations, "the parties understood and used the term 'produces' in the sense that this defendant was to be paid his overriding royalty on the basis of what each well, properly equipped as an oil well, could and would produce by virtue of its own gas pressure, and the amount said well or wells could be made to produce after the installation of pumping equipment, over a period of fifteen days, and that these matters were particularly discussed between the parties at the time of said transaction, and said term used in said instrument with this meaning," are irrelevant, immaterial, and constitute an attempt to vary, contradict, and explain the terms of the writings, which are plain, clear, and the meaning unambiguous, by extrinsic or parol evidence; (g) the allegations constitute an attempt to have the court construe the contract according to what defendant may have thought the contract or its effect would be, and not according to its expressed language.

As further answer plaintiffs pleaded the orders of the Railroad Commission and orders issued under martial law declared by the Governor limiting the oil production to less than 190 barrels per day in certain counties, including the county in which these wells are situated, as explanation or cause for the actual production, during the period of time involved here.

Butler specially excepted to plaintiff's pleading setting up the orders of the Railroad Commission and orders under martial law limiting oil production, on the ground that such orders were with reference to things happening after the execution of the assignment not entering into the contemplation of the parties, the orders were illegal and void, not binding on any one to so limit the oil production in the said wells. Butler then pleaded that the oil wells could and would have produced on an average of fifteen-day period more than 190 barrels of oil per day.

The court sustained plaintiff's special exceptions to Butler's pleading setting out what he pleaded to be the facts and circumstances, etc., attending the execution of the said assignments, and pleading ambiguity in the use of the terms "produces" and "produce."

Butler assigns error in sustaining plaintiff's exceptions.

Defendant did not plead fraud, accident. or mistake in the use of the words "produces" and "produce" in executing the assignments or other written instruments; nor did defendant allege that the number of barrels of oil actually produced was caused by fraud, accident, or mistake; nor did he allege a failure to properly equip the oil machinery, or any fact, circumstance, or condition that prevented a greater production of oil than was produced, and for which preventing or hindering cause of production plaintiffs would be responsible.

We have concluded that the terms "produces" and "produce" are not ambiguous, and that the meaning claimed for them by defendant could be given them only in connection with some hindering cause for which plaintiffs would be responsible. To illustrate: Had plaintiffs failed to properly or fully equip the oil machinery used in producing the number of barrels of oil per day, defendant could plead that but for the failure to properly or fully equip the oil machinery, the wells could and would each have actually produced 190 barrels or more of oil per day during the required period of time. In the absence of some hindering cause in connection with which and for which plaintiffs would be responsible, as in

the illustration, the terms "produces" or "produce" could be used in showing the failure of production, we think a responsibility for a less production of 190 barrels of oil per well per day is not shown.

We think it would serve no useful purpose to enter into a discussion of the meaning or uses of the term "produces." In the absence of some hindering cause in connection with which the term could properly be used, as above, we think no added meaning could properly be shown.

The court was not in error in sustaining the special exceptions.