**MIDAS OIL CO. v. WHITAKER et al.**

No. 1865.

Court of Civil Appeals of Texas. Eastland.

Dec. 23, 1938.

E. S. McCord and Carl W. Wade, both of Dallas, for plaintiffs in error.

Saye & Saye, of Longview, for defendant in error.

GRISSOM, Justice.

Midas Oil Company sued G. W. Whitaker and others. This suit required interpretation by the court of the following provision in an assignment of an oil and gas lease, to-wit: "Assignor retaining an overriding royalty of $\frac{7}{32}$ of all oil, gas or other minerals produced from said land free of cost to himself, provided, however, that in the event any well drilled on said land quits flowing oil and produces less than 150 barrels per day of 24 hours, to be determined by an average of ten days pumping test after notice to assignor, said overriding royalty interest shall be reduced to $\frac{7}{64}$, and the remainder of said $\frac{7}{32}$ shall become, pass to and vest in assignees, their heirs or assigns."

A well was drilled upon the land covered by the oil and gas lease assigned. It flowed oil at a rate of more than 150 barrels per day until the production therefrom was reduced by order of the Railroad Commission. At the time of the trial the daily allowable production permitted by the Railroad Commission from said well was twenty barrels of oil per day. On the trial the parties agreed "that the above mentioned oil well is now capable of producing much more than 150 barrels of oil per day and during all of the time since said well came in, same has been capable of producing oil, in an amount greatly in excess of 150 barrels per day, and has not quit flowing, and defendants have heretofore been paid $\frac{1}{4}$th of the $\frac{7}{8}$ths Working Interest oil production."

It is the contention of plaintiff, Midas Oil Company, that the orders of the Railroad Commission reducing the current

allowable production of oil from said well to less than 150 barrels per day had the effect of making applicable the provision in the assignment of the lease reducing by one half the overriding royalty interest of the defendants. Said orders, of course, had the effect of reducing the production from said well to less than 150 barrels a day. However, the parties agreed upon the trial that the well had not quit flowing oil and that it was capable of producing in excess of 150 barrels per day. As we interpret the contract, the parties agreed upon two conditions precedent to the reduction of the overriding royalty interest retained by the Whitakers et al, to-wit, (1) that the well quit flowing oil, and (2) that it be shown by a ten days pumping test that the well was incapable of pumping as much as 150 barrels of oil per day. If this be the correct interpretation of the plain language of the contract, then it is evident that the parties have admitted upon the trial of the case that neither of the prescribed contingencies for reduction of the overriding royalty has happened.

We think it is apparent that the parties contracted with reference to the continuance of flowing oil and with reference to the capacity of the well under pump after it had ceased flowing oil. Such interpretation of the contract involved could under no stretch of the imagination involve a violation of the orders of the Railroad Commission with reference to proration. The enforcement of the contract, so interpreted, would simply have the effect of permitting a continuation of the division of the oil actually produced in accordance with the agreement as to its division between the parties to the contract.

In the case of Exum v. Laub, 5 Cir., 87 F.2d 73, the contract construed by the court reserved an overriding royalty of ¼ of all gas and oil produced by natural flow, and ³⁄₁₆ by artificial power. The contract contained the following provision: "And provided further that in event the total production of all wells drilled upon said lease shall decline to a point below 200 barrels per day, the interest of the assignor so reserved shall be automatically reduced to an undivided ⅛ of the gross production from said lease." The court said [page 74]: "If reduction by proration had been in the minds of the parties, more apt language could, and no doubt would, have been used. Proration has the effect of 'limiting' production, but such an artificially imposed limitation is not the equivalent of a 'decline' in production if regard be had for the ordinary usage of this language in the oil industry."

With reference to the contention in that case as to the effect of proration on the contract there construed the court used the following language: "The construction urged by appellants would require the assignor, solely because of proration, to accept for his oil ½ of what he bargained for, though there is no 'decline' in the natural flow of the wells. Such a construction is not only illogical but inharmonious with ordinary experience and practice in the industry. Proration may greatly extend the period of time the operator must wait to receive the full return upon its investment in this venture. It will correspondingly increase the period of time the assignor must wait to receive the consideration for which he parted with his lease. The burden thus imposed by proration is mutual. If proration ultimately results in greater recovery, this advantage will be shared mutually by the parties."

We think the thoughts so expressed are equally applicable to the facts of the instant case.

The plaintiff (plaintiff-in-error here) relies upon the case of Butler v. Jenkins Oil Corporation, 68 S.W.2d 248, affirmed by the Supreme Court in 128 Tex. 356, 97 S.W.2d 466. The provision in the contract there construed read [page 249]: "In the event said well or wells produce less than one hundred ninety barrels per day each to be based upon an average of fifteen days then said overriding royalty shall be one thirty-second interest." That contract provided if the wells produced 190 barrels or more per day the overriding royalty should be ¹⁄₁₆. It seems apparent that the contract there construed was with reference to actual production, whether the production was regulated by natural causes or by act of the Railroad Commission. The contract in the instant case, we think, has no reference to actual production but has reference first to a continuation of its capacity to flow and second, after the capacity of the well to flow has ceased, to the well's capacity to produce under pump 150 barrels of oil per day, or more. Such construction of the contract in the instant case simply entitles the owners of the overriding royalty interest to ⁷⁄₃₂ of the oil actually produced under the ordinary operation of the well in accordance with

the proration orders of the Railroad Commission, until the happening of the contingencies stipulated in the contract. It, of course, does not entitle the holders of the overriding royalty interest to 7/32 of the oil that the well in controversy was capable of producing, and which it would have produced but for regulation. We think the distinguishing feature between the instant case and those relied upon by plaintiff is that the contracts were with reference to essentially different matters. That is, in the Butler v. Jenkins Case, supra, and Magnolia Petroleum Co. v. Stroud, Tex.Civ. App., 3 S.W.2d 462, the contracts were with reference to actual production, while in the instant case it was with reference to the capacity of the well to flow and the capacity of the well, after it ceased flowing, to produce under pump 150 barrels, or more, of oil per day.

The judgment of the trial court for the defendants is affirmed.