### TARVER et al. v. BRACKEN et al.

### No. 3872.

Court of Civil Appeals of Texas. El Paso.

Nov. 24, 1939.

Rehearing Denied Dec. 21, 1939.

W. H. Jack, Jr., R. L. Dillard, Jr., and Saner, Saner & Jack, all of Dallas, for appellants.

Henry H. Harbour and Wynne & Wynne, all of Longview, for appellees.

WALTHALL, Justice.

This appeal is prosecuted from a directed verdict for the defendants in the trial court (appellees here) against the plaintiffs (appellants here), and upon which directed verdict judgment was rendered.

This suit was brought on March 28, 1937 in the 71st District Court of Gregg County by A. H. Tarver and others, as plaintiffs, owners of a certain 28 acre oil and gas lease in Upshur and Gregg Counties, against J. A. Bracken and others, as defendants, who own an overriding royalty interest in the same lease as that of plaintiffs. The suit by plaintiffs is to recover of defendants the amount or value of the oil run from oil wells, which defendants collected and retained prior to the time of the filing of the suit, and to remove as a cloud on the title to plaintiffs' leasehold estate the defendants' claim to a one-eighth overriding royalty interest.

The respective claims of both plaintiffs and defendants depend upon the meaning and legal effect of an assignment of said oil and gas lease, of date May 25, 1931, from J. A. Bracken et al. to W. S. Randall et al., under whom the plaintiffs claim; and particularly whether, under such assignment, defendants are entitled to receive one-fourth or one-eighth of the leasehold oil produced, where actual production has been reduced, not by any hindering or preventing cause for which plaintiffs are responsible, but solely as the result of the operation of the conservation and proration statutes of the State of Texas and orders of the Railroad Commission in the enforcement thereof.

The case was tried before a jury, and at the conclusion of plaintiffs' case, upon a motion by defendants, the trial court directed a verdict for defendants and against plaintiffs and upon such directed verdict the court rendered judgment, from which this appeal is prosecuted.

Plaintiffs having alleged that their right to recovery depended upon the assignment of the oil and gas lease above referred to, the pertinent portion of the assignment is here stated: For the same consideration stated and received, and "other valuable consideration herein reserved unto the assignors," the assignors bargain, sell, grant, transfer, assign and convey all rights, title, and interest in and to the lease and all rights thereunder insofar as it covers the lands described, together with the personal property used or obtained in connection therewith, to Bracken et al., "except," and the part of the assignment we copy is the part following the exception. The contract embracing the exception reads:

"The assignors retain and reserve unto themselves as an overriding royalty, the equal one-fourth part of the lessee's proportionate part of the oil and/or gas produced, saved and marketed from the leas-

ed premises, or the market value thereof at the option of the assignee, until the full open' production of the well or wells to be drilled thereon shall decline to two hundred fifty barrels per day each, when and at which time, the overriding royalty therein reserved unto assignors shall decline to one-eighth of the lessee's proportionate part of the oil and/or gas produced, saved and marketed from any such well or wells, or the market value thereof at the option of the assignees and the other one-eighth thereof hereinabove reserved shall immediately and without the necessity of any further conveyance, pass to and vest in the assignees, their successors and assigns, as fully and to the same extent as if the same had been originally conveyed herein and no reservation thereof made.' It is the intent of this instrument that the assignors shall receive a royalty of one-fourth of the lessee's proportionate part of the oil and/or gas produced, saved and marketed from each and every well upon the premises producing more than two hundred fifty barrels of oil per day, and a royalty of one-eighth of the lessee's proportionate part of the oil and/or gas produced, saved and marketed from each and every well upon the premises producing less than two hundred fifty barrels of oil per day. The term 'day,' as used herein is a day of twenty-four hours and in arriving at whether or not any well upon the premises has declined to less than two hundred fifty barrels per day, the same shall be continuously pumped or otherwise produced for three full days and the average production thus obtained shall be considered the correct daily production from said well. Such test to be made in the presence of a representative of both parties hereto if 'they so desire. * * *

"The assignee shall at all times have the right to market any and all oil and/or gas produced upon the premises, payment of assignor's proportionate part ·of the proceeds thereof to be made directly to assignors upon division order,' by the pipe line company or other purchasing agency running and purchasing the oil and/or gas produced, saved and marketed thereon, free, clear and discharged of all cost or expense to the assignors; it being further understood that no liability shall 'ever attach to the assignees, their heirs, successors or assigns by reason·of their failure to produce from the premises any given quantity of oil and/or gas, or to continue the production thereof for the benefit of the assignors."

It seems to be undisputed and admitted facts that plaintiffs drilled five wells on the lease and property and fully equipped them to produce to full capacity, but under regulations of the Railroad Commission of Texas, production from the wells was limited to the number of barrels per day as specified and set forth in the exhibit, and conforming to the rules for production as permitted none of the wells have in fact produced as much as two hundred fifty barrels per day from September 5, 1931 to the trial. It is not questioned that plaintiffs have acted diligently and efficiently in seeking to produce the allowed maximum of oil from the wells. It is admitted that defendants received the proceeds of one-fourth of the leasehold production from September 5, 1931 to March 31, 1937. Since the last stated date the pipe line company purchasing the production has withheld the one-eighth interest in dispute.

Plaintiffs plead all.the above facts, and in addition pleaded: (1) that the contract (the assignment above quoted) is plain and unambiguous and the intention of the parties, as shown by the contract, is that the amount of the overriding royalty is to be determined by the actual production of oil from said wells, in the absence of any negligence or hindering and preventing cause on the part of plaintiffs; and that because of proration, the actual production since September 1, 1931, has been less than two hundred fifty barrels per day; (2) that the contract was entered into in contemplation of the right of the State in the exercise of its governmental powers and in the conservation of the natural resources to control the production of oil; consequently,'the legal effect of the contract is that the amount of the overriding royalty was and is to be determined by the actual production of oil from said lease by the plaintiffs in the orderly operation of the wells, the plaintiffs acting diligently and efficiently.

It is plaintiffs' contention, as expressed in the above statement in their pleading as to the legal effect of the contract and as contended in their propositions, that plaintiffs' overriding royalty reserved unto themselves was to be determined by the actual production of oil from the wells in the absence of any hindering cause for which plaintiffs are responsible and not

solely by the wells' potential capacity for production; that where the assignment contract provides that it is the intention of the instrument that the overriding royalty shall be one-fourth · of the oil produced, saved and marketed until the production declines to two hundred fifty barrels per day, at which time the royalty shall decline to one-eighth of such production, the contract, by reason of such provision, does not provide that the royalty interest can only be reduced by a failure in natural producing capacity, but ·stipulates for a reduction where there is a decrease in actual production, whether through natural failure or other causes for which the operators are not responsible, and appellants suggest that such would be particularly so where the contract further expressly states the intention of the parties that the royalty shall be based on the amount of oil actually produced.

Appellants reason from the above statements that where the actual production has been reduced by proration orders, the trial court erred in refusing to enforce the contract provision for reduction of the royalty, and on the contrary instructing a verdict based on the assumption that the royalty is only determined by capacity for production regardless of proration restriction. Appellants further submit that where the contract expresses the intention that the royalty reserved shall be based on the actual production, a further provision in the contract that where the production shall decline to two hundred fifty barrels per day, the royalty shall decline to a lesser fraction, does not manifest the intention that the royalty is reduced solely by decrease in natural capacity for production, but indicates the intention that the maximum amount of actual production shall not be reduced by any cause for which the operators are responsible.

While plaintiffs have other propositions stating their contentions, they seem to us only to amplify what is stated above.

Controverting the above, appellees submit that a contract or assignment, as here, unambiguous in its terms, is to be construed according to the intent and meaning of the parties as expressed in the language of the entire instrument; that the court cannot ascribe a different meaning to words, phrases or sentences contained in such contract than the parties themselves have indicated or defined; that the meaning of a word or phrase used in a contract when the meaning is stipulated as to its meaning such must prevail even over the usual or ordinary meaning; that the contract provides that the overriding royalty shall be one-fourth part of the oil produced, saved and marketed from the leased premises, "until the full, open production of the well or wells to be drilled thereon shall decline to two hundred fifty barrels per day," and providing that a day is twenty-four hours, and that in arriving at whether or not any well upon the premises has declined to less than two hundred fifty barrels per day, the wells shall be continuously pumped or otherwise produced for three full days, and the average production thus obtained shall be considered the correct daily production from the wells. Appellees submit that such provision in the contract manifestly intended that such provision should be considered the only test as to production.

Appellants do not contend the pumping test when applied would not determine the correct daily production, but submit, as stated, such pumping test was not the only one provided in the contract.

There is no allegation in plaintiffs' pleading, nor have we found in evidence any proof, of any natural decline in production or any test made of a decline in production by pumping as specifically provided in the contract. Actual production has decreased below two hundred fifty barrels of oil per day because of proration, but not otherwise, so far as the petition alleges or the evidence shows. ·

We think the difference in the verbiage of the contract here and the verbiage of the contract in Butler v. Jenkins Oil Corporation et al., Tex.Civ.App., 68 S.W.2d 248, 249, and reviewed by the Commission of Appeals in 128 Tex. 356, 97 S.W.2d 466, distinguishes this case from that. The Butler case is more nearly in point than any case we have found, and we refer to it more at length than we otherwise would. In the Butler case the contract provides: "The undersigned Roy Jenkins, the present owner of said lease and all rights thereunder incident thereto, does hereby bargain, sell, transfer, assign and convey all rights, titles and interest of the original lessee and present owner in and to said lease and rights thereunder, insofar as it covers a one-sixteenth overriding royalty out of the leaseholder's seven-eighths, said one-sixteenth overriding royalty to cover the oil, gas and other minerals in and un-

der all of the above described thirty acre tract of land, more or less, to be paid on such basis as long as each well upon said lease produces one hundred ninety barrels, or more per day, to be based upon an average of fifteen days. In the event said well or wells produce less than one hundred ninety barrels per day each to be based upon an average of fifteen days then said overriding royalty shall be one thirty-second interest, the above royalty interest to be computed on each well separately."

After the contract, the producing wells in the Butler case, by reason of the proration, were not permitted to produce as much as one hundred ninety barrels per day. The question in the Butler case was whether Butler, in view of the fact that the wells were not permitted, by reason of the proration, to produce one hundred ninety barrels per day, was limited to only a one thirty-second royalty, or whether the contract contemplated that one-sixteenth royalty should be paid on actual production, or capacity for production, as if no proration or other orders limiting production were made. The trial court held that the contract was not ambiguous, and excluded parol proof to vary its terms, and the Court of Civil Appeals upheld that ruling and further held that the construction of the contract was to the effect that the royalty was to be paid on the basis of actual production rather than possible production.

The Commission of Appeals said that while that court was not required to pass on the construction of the contract, the court stated as its opinion that the contract was entered into in contemplation of proration in the interest of conservation, and that the amount of royalty was to be determined by actual production and not on the basis of capacity for production, and affirmed the case.

In the Butler case the payments under the contract for oil from the well were to be made on "production" merely; while in the present case the assignors in the contract "reserve unto themselves as an overriding royalty (and not conveyed) the equal one-fourth part of the lessee's proportionate part of the oil * * * produced, saved and marketed * * * until the full open production of the well or wells to be drilled thereon shall decline to two hundred fifty barrels per day each, when and at which time the overriding royalty therein reserved unto the assignors shall de-

cline to one-eighth of the lessee's proportionate part of the oil and/or gas produced, saved and marketed," and that the other one-eighth reserved immediately passes to and vests in the assignees. Without quoting the contract further, it restates in part what the assignor shall receive. The contract then provides the method for determining "whether or not any well upon the premises has declined to less than two hundred fifty barrels per day." It will be noted in the Butler case that the question there was that the amount to be paid for the interest conveyed was based on and payments continued as long as the wells produced a stated amount, while in the present case the contract reserves title to the interest conveyed until there is a decline in production, which decline in production was to be determined by a specific test, that is, in one contract payments ceased on production, in the other title ceased on decline in production evidenced by test applied. In neither case is proration specifically referred to in the contract.

■ Appellants in argument refer to that part of the contract beginning with the words: "It is the intent of this instrument," and continuing through that sentence, and say, "this provision of the assignment is independent of and in addition to the rest of the contract, and full effect should be given to the language used." Appellants point out that in that sentence no reference is made to a "decline" or to "full and open production" or to "capacity to produce."

We do not think the sentence is independent of, or in addition to, the rest of the contract, but it is, as it seems to us, a reference to the early part of the exception and reservation and makes only a briefer statement of the intent of the parties, but we are of the opinion that it does not state a contract different or one in conflict with the other parts. The previous part of the contract and the sentence stating the intent of the instrument each refers to the production per day. The contract then states the meaning of the term "day," as used in the contract and provides the manner of determining whether any well has declined to less than two hundred fifty barrels per day. The contract states what the parties meant by daily production and how it is determined.

■ The contract in the present case, as we view it, is materially different from the contract in the Butler case, in that,

in the Butler case the parties contracted only with reference to actual production of oil to which proration specifically applied with the view to limit production and thereby prevent waste. Here, as in the Butler case, the production of oil in the wells is controlled by the Railroad Commission, but, as we construe the entire contract, appellants' royalty interest reserved is not determined by the actual production limited by proration, but such right of recovery is conditioned and determined upon the well or wells failing by natural decline in production to produce an average of two hundred fifty barrels of oil per day, such capacity of production to be ascertained as provided in the contract.

Appellants do not deny that such is a plain and express provision of the contract but allege that it is also the intent of the instrument that the amount of the royalty reserved and not assigned is the actual production determined in the orderly operation of the wells. We do not concur in appellants' interpretation of the contract. Manton v. City of San Antonio, Tex.Civ. App., 207 S.W. 951; Midas Oil Co. v. Whitaker et al, Tex.Civ.App., 123 S.W.2d 495; Spinks v. First Christian Church of Vera, Tex.Com.App., 273 S.W. 815; McGavock v. Virginia-Carolina Chemical Co., 114 Tenn. 317, 86 S.W. 380, 381.

The case is affirmed.

On Motion for Rehearing.

Appellants have filed a very forceful motion for a rehearing and in the motion say this court, in determining the legal effect of the contract, wholly failed to give any consideration to the situation of the parties and the obvious nature and object of their agreement, and failed to give any consideration to appellants' contention that the contract then under consideration was entered into in contemplation of the right of the Railroad Commission to control the production of the oil wells referred to in the contract.

We think the opinion itself, though imperfect in many respects, negatives the above statements.

At the time the assignment was entered into, May 25, 1931, authorized production of oil in the East Texas Oil Fields was limited to production of seven hundred fifty barrels per well per day. The parties entered into the contract with full knowledge and in view of and in contemplation of any action the Railroad Commission had then made or would thereafter make in the production of oil in the wells. Whether the past action of the Railroad Commission or a possible future action influenced the parties in entering into the terms of the contract would be wholly speculative, the contract making no reference to the Railroad Commission, its action, or any possible action, in limiting oil production.

Plaintiff pleaded, and we think correctly, that the contract was not ambiguous, which statement in the pleading and our construction of the contract itself led us to the conclusion that the contract was without a doubtful or equivocal meaning, uninfluenced by any action taken or to be taken by the Railroad Commission or any other body.

The contract being unambiguous, it could have but one meaning, and that meaning expressed in the contract itself.

The appellees in making sale of their overriding royalty interest in the lease retained and reserved to themselves the interest described until the full, open production of the well or wells to be drilled should decline to amount stated, when and at which time, evidently at such time when the open flow of oil in the well or wells should decline to the amount stated and agreed upon, the interest retained and reserved should pass to and vest in the assignees.

We cannot escape the conviction that the parties had in mind the capacity of the well or wells to produce oil to the extent of two hundred fifty barrels per day, and did not have in mind and contract with reference to any action the Railroad Commission might fix or limit in production. No test would be necessary to determine the production of oil limited and fixed by the Railroad Commission. We must consider the whole contract and not a part of it only.

To determine the time when and the circumstances under which the royalty interest should pass to the grantees the parties in the assignment agreed to ascertain the extent of the decline in the possible oil production of the well or wells by continuously pumping for three full days, and the average production thus obtained should be considered the correct daily production in determining the decline in oil production.

We have concluded that the proper result was reached in the opinion, and that the motion should be overruled, and it is so ordered.