DANIEL STEARNS *vs.* BENJAMIN GODFREY *& al.*

If a condition subsequent be followed by a limitation over, in case the condition is not complied with, or there is a breach of it, it is termed a conditional limitation, and takes effect without any entry or claim, and no act is necessary to vest the estate in the party to whom it is limited.

Where the Commonwealth of *Massachusetts* granted a tract of land to B and F by name, and to certain settlers named only in the habendum, each settler to have a hundred acre lot, including his improvements on which he lived, " on condition that each of the grantees aforesaid, pay to said B and F five pounds in lawful money, within one year from this time, with interest till paid," followed by these words, " provided nevertheless, if any settler, or other grantee aforesaid, shall neglect to pay his proportion of the sum or sums aforesaid, to be by him paid, in order to entitle him to one hundred acres as aforesaid, in that case the said B and F shall be entitled to hold the same in fee, which such negligent person might have held by complying with the condition aforesaid on his part;" the title of any settler, who failed to perform the condition within the year, vested in fee in B and F, and was out of the reach of legislative control.

The owner in fee of land cannot be disseized thereof by his own tenant, except at his election.

Where a mortgage has been cancelled and discharged, and a new security on the same land has been taken for the debt, the mortgage is to be considered as if it had never existed, and intervening incumbrances or attachments are let in.

THIS was a writ of entry, brought to recover a tract of land in *Orrington,* being part of No. 25. The facts in the case sufficiently appear in the opinion of the Court. At the trial before SHEPLEY J. the counsel for the tenant requested the Judge to instruct the jury —

1. That the deed from the Commonwealth to *Brewer* and *Fowler* operated to convey a title to the premises to the settler represented by *Gould,* and that their deed to *Sweat* would not operate to convey it to *Sweat.*

2. That *Gould* being in possession and claiming to hold, and actually occupying it as his own property at the time of the deed from *Brewer* and *Fowler* to *Sweat,* that deed could not convey it to *Sweat,* because they were disseized at the time.

3. That at the time of the deed from *Sweat* to *Wilkins, Gould* was in possession under the title of *Neal,* and claiming and exclusively occupying by virtue of that title, and the title in *Wilkins* by that deed was defeated, *Sweat* being disseized at that time.

The Judge instructed the jury — 1. That the title did not pass to the widow *Ary* by the deed to *Brewer* and *Fowler*, nor to *Gould* after the designation of the lot by *Dummer*.

2. That when *Gould* purchased of the widow *Ary*, if he did so with the design to take her right as a settler, and to obtain a title through *Brewer* and *Fowler* by complying with the terms stated in their deed, and have his lot assigned to him as a settler, then his possession would not be adverse to the title of *Brewer* and *Fowler*, but in submission to it, and there would be no disseizin; but if he claimed and occupied with a design not to take a title under them, but claimed to hold against them, being in the exclusive occupation, then they would be disseized, and no title would pass by their deed to *Sweat*.

3. That if, at the time *Sweat* conveyed to *Wilkins*, *Gould* claimed to hold the premises as *Neal's* property, and exclusively occupied as such, then no title would pass by that deed. But if he procured the deed from *Sweat* to *Wilkins*, and did not claim to hold against that title, but yielded to it, and intended it should pass the title to *Wilkins*, then the title would pass, and there would be no disseizin. And if a disseizin had not been proved in either of those ways before stated, the demandant is entitled to recover; but if a disseizin had been proved in either of those ways, then their verdict should be for the tenants.

The verdict was for the demandant, and was to be set aside, if the instructions were erroneous.

*Rogers*, for the defendant, argued in support of the grounds taken in the requests for instruction, at the trial, and cited *Shep. Touch.* 75, 76; 4 *Com. Dig. Fait, E* (9); 4 *Kent*, 468; and commented on the several resolves of the Commonwealth of *Massachusetts*, in relation to this land.

*Cutting*, for the demandant, argued in support of the ruling of the Judge.

The opinion of the Court was by

WESTON C. J. — Until *March* 25th, 1786, the title to the land in controversy was in the Commonwealth of *Massachusetts*. On that day, it was included in a large tract granted and conveyed, by a committee in behalf of the Commonwealth, to *John Brewer* and

*Simeon Fowler*, and certain settlers on the tract, mentioned by name as grantees in the deed, among whom are *Hannah Ary*, widow, and *Solomon Sweat*. The deed contained the following clause in respect to these settlers, " on condition that each of the grantees aforesaid pay to *John Brewer* and *Simeon Fowler*, five pounds in lawful money, within one year from this time, with interest till paid." Taking the deed together, we must regard it as conveying to each of the settlers . named, one hundred acres of the land, subject to be defeated upon the non-performance of the foregoing condition, within the year. Generally an entry of the grantor or his heirs is necessary to defeat an estate thus granted, upon condition subsequent ; and the estate could not be divested by the entry of a stranger. But the deed contained a further clause, which is in these words, " provided nevertheless, if any settler, or other grantee aforesaid, shall neglect to pay his proportion of the sum or sums aforesaid, to be by him paid, in order to entitle him to one hundred acres as aforesaid, in that case the said *John Brewer* and *Simeon Fowler* shall be entitled to hold the same in fee, which such negligent person might have held, by complying with the condition aforesaid on his part."

It is a rule of law, that if a condition subsequent is followed by a limitation over, in case the condition is not fulfilled, or there is a breach of it, that is termed a conditional limitation. 2 *Black*. 155 ; 4 *Kent*, 121 ; *Pells* v. *Brown*, *Croke James*, 590. This limitation takes effect without entry or claim, and no act is necessary to vest the estate in the party, to whom it is limited. The land then was conveyed to the settlers named, with a conditional limitation over to *Brewer* and *Fowler*, if they or either of them, failed to fulfil the condition, within the time appointed. There was a failure on the part of the settlers ; whereupon at the end of the year, in *March*, 1787, the fee of the land in question vested in *Brewer* and *Fowler*.. The settlers having petitioned the legislature to interfere in their behalf, a resolve was passed on the twenty-fourth of February, 1791, proposing, that if *Brewer* and *Fowler* would quiet the settlers for a less sum, than they were originally to receive, the difference should be made up by the Commonwealth. The rights of *Brewer* and *Fowler* were recognized in that resolve which, having become vested, were out of the reach of legislative

control. The settlers were treated with indulgence, both by the Commonwealth and by *Brewer* and *Fowler*, who discovered no unwillingness to accede to the proposition made to them.

On the twentieth of *December*, 1794, one *Ames* and his wife, the same who had been the widow *Ary*, conveyed their title to the *Ary* lot to *Nathaniel Gould*, the elder. Although the legal title to the land was in *Brewer* and *Fowler*; yet as they were willing to release their right to the settlers, upon the payment of a small sum, the beneficial interest was regarded as in the latter. It does not appear that *Gould* resisted or denied the title of *Brewer* and *Fowler*, while it remained in them, and the jury have found, that they were not disseized by *Gould*.

In consequence of the mistake of *Nathaniel Dummer*, who acted under the resolve of *March* first, 1799, *Gould's* lot was assigned to *Solomon Sweat*, and *Sweat's* lot to *Gould*. In *February*, 1804, they both accepted from *Brewer* and *Fowler*, deeds of each other's lots, having paid to them the sums stipulated. Whether *Dummer* had authority thus to locate to each his lot, or whether what he did was binding upon them, if they had refused to acquiesce, it is not necessary to decide, as the parties concerned were satisfied to abide by the arrangement.

Up to this period, there is nothing in the case, except perhaps the mortgage to *Neal*, tending to show, that *Gould* claimed adversely to *Brewer* and *Fowler*, but that he held in subordination to their title. He witnessed the deed of his lot to *Sweat*, of the contents of which he could not be supposed to be ignorant, as he himself received a deed of *Sweat's* lot. They must have been given at their instance, and upon payment of money. *Gould* set up no adverse seizin, and interposed no objection, so that as far as he was concerned, there was nothing to prevent the operation of the deed to *Sweat*. As he still occupied the land, he must be considered as holding as *Sweat's* tenant at will, and subject to the duties of that relation. It is true he violated those duties, by a conveyance of the land in fee to *Neal*, in *July*, 1806. This, at the election of *Sweat*, might have been treated as a disseizin. But *Gould* remained in as before, recognizing *Sweat's* title ; for in 1810, he requested him to convey to *John Wilkins*, he himself conveying the land, of which he had taken a deed to *Sweat*. From *July*, 1806,

VOL. IV.　　　21

*Gould,* the elder, may have professed to *Neal* and his agent, that he held under him; and as between them, *Gould* was *Neal's* tenant at will; but he previously stood in the same relation to *Sweat,* who had prior claims to his fidelity as tenant. Unless *Sweat* elected to consider himself disseized, for the sake of his remedy, he had a right still to treat *Gould* as his tenant. In the conflict of duties, which *Gould* assumed, he was doubtless playing a double game for his own purposes; and there is much reason to believe, that his object was to defraud *Neal.* But there is no evidence, that the tenant had any notice of it, or that it is in any degree imputable to him. He is entitled to stand upon his rights; and if by the rules of law, the title is in him, it must be so adjudged. If the title of *Neal* is not to be traced back to a period anterior to *July,* 1806, the seizin and the fee were then in *Sweat.* He could not be disseized by his own tenant, *Gould,* except at his election. *Blunden* v. *Bangle, Cro. Charles,* 302. If there was no disseizin, the tenant has connected himself with *Sweat's* title, and must prevail.

It may be insisted, that *Neal's* title commenced when the mortgage deed was executed to him by *Gould,* in 1797, and that he then succeeded to *Gould's* seizin. If so, *Gould* could do nothing in 1804, or subsequently to impair *Neal's* right. It is not improbable, that the justice of the case, in some of its aspects, might be best promoted by sustaining these positions, if they were in accordance with the facts. The fraudulent practices of the elder *Gould* would thereby be defeated, and the heirs and assigns of *Neal* would enjoy the fruits of his purchase. But the rights of other persons, not conusant of the fraud, if any existed, have intervened; and if it has appeared, that *Neal* has waived an advantage, he might have retained, his heirs and assigns must abide the consequences. In *July,* 1806, he cancelled his mortgage, and took a new conveyance from *Gould.* The mortgage having been discharged, no rights can be predicated upon it, or deduced from it. Intervening incumbrances or attachments, if any had existed, would thereby have been let in. *Neal* could not have set up prior rights, arising from the cancelled mortgage. We cannot regard it as having any more effect upon the cause, than if it had never existed. If *Neal* would have preserved his title under the mortgage, he should have

Stearns *v.* Godfrey.

refused to discharge it without payment, and declined the arrangement proposed by *Gould*.

As the lot in question vested in *Brewer* and *Fowler*, in *March*, 1787, the instruction first requested, was properly withheld, as were also the second and third, the jury having negatived the facts, upon which they were based. The jury were instructed, that the title did not pass to the widow *Ary*, by the deed to *Brewer*, *Fowler* and others, but as it passed to *Brewer* and *Fowler*, at the end of a year, *viz.* in *March*, 1787, by a conditional limitation, the legal effect was the same, as if it had never vested in the widow *Ary*, so that the tenants were not unfavorably affected, by this instruction. The other instructions given to the jury were substantially correct.

*Judgment on the verdict.*