**SPINKS et al. v. FIRST CHRISTIAN CHURCH OF VERA. (No. 514–4190.)**

(Commission of Appeals of Texas, Section B. June 24, 1925.)

1. **Deeds ⬠95—Deed construed by reading all its provisions, which must be harmonized if possible.**

A deed must be construed by reading all its provisions which must be made to harmonize wherever possible, giving each clause effect, unless inconsistent the one with the other.

2. **Deeds ⬠154—Stipulation of deed of gift held to constitute condition precedent and limitation of title.**

In deed of general warranty, conveying title to church elders in trust for church, clause providing that title revert to donor, if grantees failed to build church on granted premises within 24 months, which followed granting clause and preceded habendum and warranty clauses, *held*, in view of whole deed, to be a condition precedent, and to mark period of utmost time of continuance of conditional estate.

3. **Appeal and error ⬠1089(1)—Appellant in Court of Civil Appeals held entitled to have Supreme Court pass on assignments not passed on in Court of Civil Appeals.**

Where Court of Civil Appeals, having decided for appellant on principal issue, found it unnecessary to pass on his other assignments with reference to his having acquired title by limitation, and where Supreme Court differed with it on point it did discuss, appellant has right to have Supreme Court pass on assignments in his brief in Court of Civil Appeals with reference to limitation.

4. **Adverse possession ⬠60(1)—Facts held to show church did not hold lot adversely after limitation of title in deed.**

Facts *held* to show that church, as grantee of deed to lot after limitation of title thereof, did not hold land adversely.

Error to Court of Civil Appeals of Second Supreme Judicial District.

Trespass to try title by the First Christian Church of Vera against R. C. Spinks and others. Judgment for defendants was reversed, and judgment rendered for plaintiff by the Court of Civil Appeals (260 S. W. 1073), and defendants bring error. Reversed, and judgment of district court affirmed.

D. J. Brookreson, of Benjamin, for plaintiffs in error.

Dickson & Newton, of Seymour, for defendant in error.

POWELL, P. J. The nature and result of this case have been admirably stated by the Court of Civil Appeals, as follows:

"This was a suit in trespass to try title, instituted by the First Christian Church of Vera, Tex., against the Vera Baptist Church, to recover two acres of land situated in the town of Vera, and from a judgment rendered in favor of the defendant, the plaintiff has appealed.

"W. T. Ward was the common source of title. The plaintiff claimed title under a deed, date May 10, 1912, reciting a cash consideration paid of $10, executed by Ward, conveying the property in controversy to J. C. Gray and Van D. Alford, as elders of the plaintiff church, and their successors in office. The deed was duly filed for record in the deed records of Knox County on the same day it was executed, in the usual form of a conveyance with warranty of title, with the exception only of the following provisions:

" 'It is agreed by and between the parties hereto that this conveyance is for the use and benefit of the said First Christian Church of Vera, Tex. It is further agreed and understood by and between the parties hereto that in event the said First Christian Church shall fail to erect upon said premises a church building within 24 months from date of this deed that then in that event the title to said premises shall revert to the said W. T. Ward, and this conveyance shall become null and void. And in event the said Christian Church shall erect said building within said time then in that event the title of the said First Christian Church in and to said tract of land shall become absolute.'

"The defendant claimed title under a deed dated October 24, 1921, purporting to convey the property in controversy to R. C. Spinks, J. J. Collier, and A. E. Boyd, deacons of the defendant church and their successors in office, for the use and benefit of the defendant, and reciting a cash consideration paid of the sum of $300. That deed is in the usual form of a conveyance with warranty of title, and purports to convey an absolute fee-simple title.

"It thus appears that plaintiff's deed had been executed and filed for record 9 years 5 months and 14 days before the execution of the deed in favor of the defendant.

"Plaintiff never erected a church building on the property, and by reason of its failure to do so the trial court held, in effect, that under and by virtue of the stipulations in its deed plaintiff's title ceased and terminated at the expiration of the 24-month period fixed in the deed, and for that reason decreed title in the defendant under its deed from Ward and wife.

"The defendant seeks to sustain the judgment of the trial court upon the theory that the stipulation quoted from the deed to plaintiff constituted a limitation of title, and not a condition subsequent. Obviously, that was the view taken by the trial judge.

"The appellant's contention is that the clause in its deed mentioned above did not constitute a limitation of title, but was a condition subsequent; that the breach of that condition did not, ipso facto, revest title in the grantor, and that the grantor's deed to the defendant conveyed no title because prior to its execution he had lost his right to claim a reversion of title as against plaintiff by his failure for an unreasonable length of time to assert such right of reversion."

Upon appeal, the Court of Civil Appeals sustain the contention of the Christian Church, quoted in the preceding paragraph

of this opinion. The order of that court was as follows:

"For the reasons above stated, the judgment of the trial court is reversed. Judgment would be here rendered in favor of the plaintiff for the property in controversy, but, since the issue of damages for destruction of the timber has not been determined, the cause will be remanded. And, in view of our conclusions that the record shows without controversy that W. T. Ward waived his right to claim a reversion of title as against plaintiff for failure to erect a church building, it is unnecessary to determine the merits of other assignments presented in appellant's brief,' to the effect that plaintiff established title by limitation."

In order to secure· a final judgment, the Christians waived their claim for the timber the Baptists had cut in clearing the 2 acres. Therefore, in its opinion on rehearing, the Court of Civil Appeals held:

"Since the rendition of our judgment on original hearing appellant has filed an offer to remit any claim for the value of timber destroyed by appellee on the land in controversy. As indicated in our original opinion, the case was remanded for another trial solely by reason of that claim. With that claim now eliminated, it follows from our former conclusions that judgment must be and the same is here rendered in favor of appellant for the land in controversy, the judgment of the trial court having been already reversed; and appellees' motion for rehearing is overruled."

See 260 S. W. 1073.

[1, 2] A· deed must be construed by reading all of its provisions. They must be made to harmonize in all their provisions, wherever possible. Each clause must be given effect, unless inconsistent the one with the other. Now this deed to the elders of the Christian Church was in the form of a general warranty deed, except for its provisions already quoted by the Court of Civil Appeals. These provisions followed the granting clause and preceded the habendum and warranty clauses in the deed. Those conditional clauses constituted the very essence of the deed. They gave expression to the all-controlling purpose of the grantor. Giving effect to this deed, as a whole, the condition was precedent rather than subsequent. In the case of Wiederanders v. State, 64 Tex. 133, Judge Stayton quoted with approval the following definitions by Kent:

" 'A precedent condition is one which must take place before the estate can vest or be enlarged.' 4 Kent, 125; 2 Black, 154.

"Conditions subsequent 'are those which operate upon estates already created and vested, and render them liable to be defeated.'" 4 Kent, 126; 2 Black, 154. ·

Still further Judge Stayton quotes with approval the following from Kent:

" 'Words of limitation mark the period which is to determine the estate; but words of condition render the estate liable to be defeated in the intermediate time, if the event expressed in the condition arises before the determination of the estate, or completion of the period described by the limitation. The one specifies the utmost time of continuance, and the other marks some event which, if it takes place in the course of that time, will defeat the estate. The material distinction between a condition and a limitation consists in this: that a condition does not defeat the estate, although it be broken, until entry by the grantor or his heirs. But it is in the nature of a limitation to determine the estate when the period of limitation arises without entry or claim.' 4 Kent, 127."

These definitions have always been recognized in Texas. The difficulty arises in construing the deed in each case: In the case of Stevens v. Railway Co., 212 S. W. 639, this section of the Commission of Appeals, in an opinion by Judge McClendon, reviews the authorities. In that case, the court said:

"While the legal attributes of the two estates under consideration are well defined and clearly distinguished, difficulty often arises when construing particular instruments in determining whether they fall within one or the other class. In this question of construction the chief difficulty lies. Certain general principles have from time to time been laid down, but it is not always easy to apply these principles to the particular case."

As just stated, the difficulty arises in construing the deed in suit. As already declared by us, however, we think this deed is in no sense upon a condition subsequent: Rather, it is upon ·a condition precedent, with a limitation' as to when that condition may be performed. Under the evidence in this case, and as shown by the deed, Ward wanted a Christian Church in his neighborhood. He was willing to give the church the 2 acres of land for that purpose. The one condition was that a church be constructed within 24 months. He made no requirements as to the value of the church building, nor its style of architecture nor whether it be built on credit or for cash. Nor did he provide that the deed would remain valid and binding only so long as the church building was used for worship. Requirements of this kind are generally present in school, church, gin, compress, and railway depot lots. He simply provided that, if one thing be done within a given time, the deed should become effective; otherwise it would be "null and void." In other words, the deed was lying dormant until it should be vitalized and given life by the performance of this condition precedent. The deed merely gave to this church this right to acquire title to this lot by doing a certain thing beforehand. It required affirmative action to bring the deed into being. It was not a question of defeating a deed already in force, as must be true in a condition subsequent. We have been unable to find a deed just like the one at bar. The intention of the grantor here is

made quite clear. He shows beyond a doubt that the deed merely conveys a right to these people to acquire title. Furthermore, the grantor clearly evidences his intention that this indefinite kind of right must be terminated in 24 months. He makes provision for a definite termination in one or the other of two ways. If a church be built in 2 years, a fee-simple title will thereupon vest in the grantee; if not, the property not only reverts to the grantor, but the deed itself becomes "null and void." That is to say, the church acquired a title, without further conditions, if it erected the building within the 24-month period. If no such building was so erected, the deed became of no force or effect and canceled itself. The one and only condition was to be removed within 24 months. This period marked "the utmost time of continuance" of this conditional estate. It was a clear and definite limitation. After that, a fee-simple title, and no other, would remain either in the grantor or become vested in the grantee.

The deed, with its limitations, is very much like a general warranty deed, without limitations, left in escrow to be delivered upon certain conditions precedent. Unless those conditions be performed the deed never becomes effective. No action on the part of the grantor in an escrow deed is necessary to regain his title, where there is a time limit as to when the conditions can be performed.

None of the cases relied upon by the Court of Civil Appeals are in point. They do not contain the provisions we have in the deed in the instant case. But plaintiffs in error cite one case which is more nearly in point with the case at bar than any we have discovered. It is not so strong for the grantor as the case at bar. But, even there, the Court of Civil Appeals held that no entry was required to regain the title, as is necessary in a condition subsequent broken. We refer to the case of Stewart v. Blain, 159 S. W. 928. The opinion was written by Judge Reese for the Court of Civil Appeals at Galveston. In that case, the heirs and assignees of the grantor in the deed, as interveners, recovered title to the acre of land. Judge Reese expresses our sentiments so exactly, we take the liberty of quoting from his decision as follows:

"Most of appellant's brief is devoted to a discussion of the question, presented by his first assignment of error, involving the distinction between a conditional limitation and a condition subsequent. Appellant's contention is that the provision for reversion in the deed of Zelian Blanchette to the county judge is a condition subsequent, and not a conditional limitation, and (1) did not survive to the grantor's heirs, (2) was not capable of conveyance to a stranger (Ainsworth), and (3) could not be asserted without re-entry. We are inclined to hold that; even under the fine spun theorizing with regard

273 S.W.—52

to the largely fanciful distinction between a condition subsequent and a conditional limitation, the provision in question in the deed is a conditional limitation. Templeman v. Gibbs, 86 Tex. 362, 24 S. W. 792; Green v. Gresham, 21 Tex. Civ. App. 601, 53 S. W. 382; Stearns v. Godfrey, 16 Me. 158; Williams v. Jones, 166 N. Y. 522, 60 N. E. 240; Church, etc., v. Grant, 3 Gray (Mass.) 142, 63 Am. Dec. 725. The sense and evident intention of it was that the grantees were to own and possess the property as long as it was used for school purposes. But we do not find it necessary to follow appellant in what is so learnedly discussed in his brief with regard to this distinction. Neither of the parties to the deed had in mind any such distinction. They came to an agreement about the matter and endeavored to express their meaning by the language of the deed. The property was a gift or donation from Blanchette, and he had a right to make what conditions and limitations he chose. The property is conveyed to the county judge 'for the purpose of erecting a schoolhouse for the benefit of colored school community No. 4, * * * it being expressly understood that in the event of the removal of the schoolhouse therefrom by said county judge and his successors in office or the school trustees, or their successors in office, the said acre of land shall revert back to me or my heirs or assigns, and this deed shall become thereafter void and inoperative.' It seems to us that this language expresses the intention of the parties in terms so plain that the court would not be authorized to resort to any recondite distinction between a conditional limitation and a condition subsequent, or technical definition of these terms, in order to arrive at such intention, nor to make use of such to thwart such expressed intention. It seems to us that these provisions mean, and were intended to mean, that the grantees should own and use and enjoy the property so long as it was so used for the purpose for which it was conveyed, and that when this condition ceased the title and right of possession should at once revert to the grantor, 'or his heirs or assigns.' What other effect could follow from the provision that the deed, upon such contingency, should 'become thereafter void and inoperative;' that is, should become as though it had never been executed? The grantees have title only by virtue of the deed. What becomes of their title when the deed by its own terms becomes 'void and inoperative'? This contingency is carefully provided for in the deed. It shall 'revert back to me, or my heirs or assigns.' From this view the title did revert to Mrs. Lee and Sidney Blanchette, and thereafter by his deed Sidney Blanchette's interest passed to C. H. Ainsworth."

It seems that no writ of error was applied for in the case from which we have just quoted. What Judge Reese said, in affirming the lower court in that case, applies to the case now under consideration. Applying the so-called technical definitions to the instant deed, we think there was a conditional limitation and not a condition subsequent. But, aside from that, we are deeply impressed by the facts in the case and the rank injustice of taking this land from Ward and his assigns.

We realize that forfeitures of deeds are not favored, and that ordinarily they are construed most strongly against the grantor. That is as it should be. But here we have a different case. We have a deed of gift. All the evidence shows, that it was a gift. The giver has a right to fix his own conditions. He fixed but one. There was no effort on the part of the church to comply with it. The land stayed in the brush until the Baptists cleared it. Of course, that interfered with Gray, one of the elders of the Christian Church, who was using the 2 acres as a pasture for his own cattle, not those of the church. He then raised a protest. The lawsuit followed.

Of course, it is difficult to determine just what was the motive of Ward in giving the 2 acres to the church. His motive is unimportant. He had some reason satisfactory to himself. The Court of Civil Appeals seemed to think he wanted primarily to enhance the value of his adjoining property. It seems not. This is rather conclusively shown by his act in selling the remaining 112 acres in this survey in July, 1912, only a little more than 2 months after he deeded the 2 acres to the church. Of course, in selling the rest of the survey he expressly excluded the 2 acres theretofore sold to the church. If he had felt that the church building would enhance his property, he would have waited until the church was built. When he sold the bulk of his land, he only had a prospect or a possibility of a church finally gracing the 2-acre tract. It is more reasonable to assume that he wanted a place of worship located conveniently to his home. It may have meant much to him sentimentally to have a church on his land. He did not get the church. The consideration for his deed failed entirely, not only for the 2 years, but for 5 or 6 more thereafter. If the church, even after the expiration of the 2-year period, had made an effort to erect the building, Ward would probably have given them a new deed. The evidence indicates his interest. Or, if he had acquiesced in their erection of a building after the 2 years had expired, we do not say that the church would have had no rights. Such a question is not before us. We do not pass upon it. The facts do not show that the Christian Church had any intention, even at the time of the trial, of ever using the church lot. Elder Gray was still using it as his personal property.

The net result of the ruling of the Court of Civil Appeals is that Ward is deprived forever of his property without having received the sole consideration expressed in the instrument by which he deeded it away. This is manifestly unjust. On the other hand, if the property reverted to Ward, the Christian Church was done no injustice whatever. They had spent nothing on the property. They had slept on their opportunity to acquire title to the land for church purposes. If the judgment of the Court of Civil Appeals is affirmed, the land will likely continue to be used by an individual, for private purposes, without paying compensation to any one therefor. Why should such a judgment be upheld?

It will be observed that the deed in Judge Reese's opinion provided that, when the lot was no longer used for school purposes, the land should revert to the grantor and the deed become "void" and inoperative." Just so was the deed, in the case at bar. It provided for reversion, and also that the deed itself should become "null and void."

The parties to the instant deed made their intention perfectly clear. They had in mind no fanciful or technical distinctions about limitations or conditions subsequent. The church was given an option to acquire a 2-acre site by building a house of worship thereon within a certain time. If not so erected, the option would expire, and the trade would be at an end. This being without doubt the intention of the parties, that intention should be given effect.

In view of our conclusion with reference to the proposition already discussed, it is not necessary for us to determine whether or not the Court of Civil Appeals correctly decided that the Wards had waived the right to make re-entry. We do not go into the matter as to the correct rule upon this point, where the situation is held to involve a condition subsequent.

[3, 4] The Court of Civil Appeals, having decided with the Christian Church upon the principal question at stake, found it unnecessary to pass upon the assignments of that church with reference to having acquired title by limitation. Therefore, since we have differed with the Court of Civil Appeals upon the point it did discuss, the Christian Church has the right to have this court pass upon its assignments in its brief in the Court of Civil Appeals with reference to a limitation title. The only such assignment reads as follows:

"The court [trial court] erred in not concluding, as a matter of law, under the facts, (a) that plaintiff had perfected its title to the land in controversy under the 3 years' statute of limitation; (b) and that as a matter of law, under the facts, plaintiff had perfected its title to the land in controversy under the 5 years' statute of limitation."

In the first place, a serious question might arise as to whether or not the deed to the Christian Church, which never really became effective as a conveyance, could become the basis of a claim under either the 3 or 5 year statute. But it is not necessary to pass upon that question. Assuming, for the sake of the argument only, that it was a sufficient deed under either statute, the possession under the

deed must be "adverse." The claim is made that it was adverse, as a matter of law. This is incorrect. Not only so, but we think that, as a matter of law, the facts show the holding of the church lot was not adverse. If any one held it for the church, it was Gray, the elder who brought this suit. And, in his testimony he admits that he told the Wards that, if the Christian Church did not take the land, he wanted the refusal of it. This statement to the Wards by Gray was after the 2 years had elapsed and the land had reverted to the Wards. Mr. Ward was dead at the time of the trial. But Mrs. Ward makes the statement in this connection much stronger than Gray. Still, weighing Gray's testimony alone, it shows he recognized the title was again in the Wards, and that he or the church would have to get another deed if the Wards were to be deprived of the land. It shows beyond question that he was not trying to claim the 2 acres adversely. The church had never fenced this 2 acres off from the other part of this survey. Nothing had been done with it. Gray's personal cattle, roaming over his own land, also went over this church lot. The trial court rendered the only correct judgment under the facts in this case.

It is admitted that the church paid no taxes on this lot. Whether or not, to acquire title by limitation, a church would be required to pay taxes on its property not used for church purposes is another interesting question not necessary to decide.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.