Louis S. GEX et al., Appellants,

v.

TEXAS COMPANY, Appellee.

No. 6940.

Court of Civil Appeals of Texas.

Amarillo.

June 27, 1960.

Rehearing Denied Sept. 6, 1960.

Richards & Ferguson, Dalhart, for appellants.

W. N. Sands and J. S. Rowe, Midland, for appellee.

CHAPMAN, Justice

This opinion is in lieu of our opinion announced on March 28, 1960.

This is an appeal from a summary judgment granted appellee, The Texas Company, against plaintiffs below, appellants here, Louis S. Gex and E. E. Coons.

On August 19, 1926, the then owners of Section 39, Block 1–C, GH&H RR Co. Survey, in Sherman County, Texas, Louis S. Gex and wife, Kate E. Gex, executed and delivered to appellee an instrument which we shall hereafter refer to as The Mineral Deed. Material to this proceeding the instrument provided:

" * * * for and in consideration of the sum of *Four Thousand, One Hundred Sixty Dollars ($4,160.00) cash in hand paid* by The Texas Company, A Texas corporation, Grantee, do hereby Grant, Bargain, Sell and Convey unto the said The Texas Company *all* of the *oil, gas and other minerals,* whether similar or dissimilar, *on,* in or under the following described tract of land in the County of Sherman, State of Texas, to-wit:

"All of Section number Thirty-Nine (39), Block number One C (1c), G. H. & H. R. R. Co., containing six hundred forty (640) acres, more or less, together with the *rights of ingress and egress* for the purpose of drilling or mining for, and producing, storing and transporting oil, gas and other minerals, and of erecting any and all necessary structures for such drilling, mining, transporting and storing, and erecting any and all buildings necessary or incident to such operation; with the right to remove any and all property of whatever kind or character placed on said premises.

"It is agreed that The Texas Company, its successors or assigns, shall never be under obligation to drill **or** mine for *oil or gas or other minerals,* but that such mining or drilling, *both before and after production,* shall be *wholly at the option* of said grantee, its successors or assigns. However, should oil or gas be produced from said premises in paying quantities by The Texas Company, its successors or assigns, then there shall be *paid* to grantors, their heirs and assigns, a royalty of one-eighth (⅛) of the interest *hereby conveyed* in all oil and gas produced and saved by said grantee, its successors or assigns; The Texas Company, its successors or assigns, having free use of oil and gas for fuel for operations conducted on said premises.

"To Have and to Hold the above described oil, gas and other minerals and the rights herein granted, all and singular, unto the said The Texas Company, its successors and assigns, forever; and we do hereby bind ourselves, our heirs, executors and administrators, *to warrant and forever defend* all and singular said *oil, gas and other minerals* and the rights herein granted unto the said The Texas Company, its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof." (Emphasis supplied.)

More than twenty-four years later, to-wit, December 1, 1950, the then owners of the described land executed a "Modification of Mineral Deed" to appellee supplementing the Mineral Deed, agreeing, "that said Mineral Deed be and the same is hereby amended to contain the following additional clauses and provisions, * * *" then granting appellee the right to communitize the section with other lands, provided the communitized area shall not exceed an area of 650 acres. This instrument further provided:

"*In the event Grantee exercises such right,* it is agreed that the entire area within **any** such communitized area

shall be deemed, treated and operated as though the same where covered and included in a single deed and/or oil and gas lease, except as to the rate and division and payment of royalties, and as to such it is agreed:

"(a) The royalty to be paid Grantor on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or in the manufacture of gasoline or other produce therefrom, the market value at the well of one-eighth of the gas or sold or used, provided that on gas sold at the wells the royalty shall be one-eighth of the amount realized by Grantee from such sale, or such market value, whichever is greater.

"(b) *The payment of such royalty on gas to Grantor herein on gas produced from a well or from wells located on any part of any such communitized area shall be only in the proportion that the acreage covered by this deed and included in such communitized area bears to the total acreage in such communitized area and as though all of the lands included in such communitized area had been originally covered by this deed. The communitization of the lands or any part thereof covered by this deed in accordance with the foregoing provisions hereof shall be accomplished by the execution by the Grantee herein itself or joined by others, and the filing in the recording office of Sherman County, Texas, of an instrument in writing declaring its or their purpose to communitize,* and describing the leases and lands communitized, which communitization shall cover natural or dry gas rights only. 'It is understood and agreed that said communitized area shall cover all of said Section 39.' "

"Said above quoted provision being hereby incorporated in said deed with like effect as though the same had originally been contained therein." (Emphasis supplied.)

In their first count appellants alleged the "Modification of Mineral Deed" is controlling, that it provided "that on gas sold at the wells the royalty shall be one-eighth of the amount realized by grantee from such sale, or such market value, whichever is greater;" that they own .03125 of the gas produced, less tax, that it was of the reasonable market value on the dates produced of 10 cents per M Cubic feet, that their part was of a value after taxes of $2,894.50, that they had been paid $1,476.93 and appellee still owed them the difference in the two sums just named of $1,417.57, with interest at 6 per cent per annum from the respective dates payments were made, constituting the difference in what it was sold for and the fair market value.

In their second count they alleged in the alternative that in the event the Modification of Mineral Deed is not controlling, then The Mineral Deed is and that it provides for payment to appellants of their one-eighth royalty in kind, that appellee has had the use of such funds that were not paid to appellants, but should have been and has failed and refuses to pay the market value of the gas of $2,894.50, leaving the additional amount due of $1,417.57 with 6 per cent interest per annum from the respective dates payments were made.

On November 21, 1958, appellee filed its Motion for Summary Judgment, on March 13, 1959, its First Amended Motion for Summary Judgment and its Second Amended Original Answer containing special exceptions. Appellants then filed their trial amendment in which they alleged appellee had sold to Phillips Petroleum Company appellants' part of the gas under contract, without appellants consent, for a period from 1951 through 1976 and for an indefinite period thereafter at prices below the market value and in doing so did not act as a reasonably prudent operator. Upon

a hearing of the Motion for Summary Judgment and a hearing upon appellee's exceptions all exceptions were sustained and the Motion for Summary Judgment granted. Upon their appeal appellants assert The Mineral Deed required payment of gas in kind, and that the instrument did not expressly and the law does not by implication authorize appellee to market appellants' part of the gas under a contract that is indefinite and for a price below market value, and

"(a) Under the Modification of Mineral Deed there is a genuine fact issue as to the market value of appellants' gas converted by appellee and

"(b) Under the Mineral Deed there is a genuine fact issue whether appellee acted as a reasonably prudent operator in marketing appellants' part of the gas."

The first question to be determined is whether the "Modification of Mineral Deed" granting appellee "the right to communitize" and specifying the rights of the parties "in the event Grantee exercises such right," is controlling so as to enlarge appellants' royalty rights even though appellee did not exercise the right to communitize. The "Modification of Mineral Deed" granted appellee the right to pool, unitize and combine into one or more communitized areas the natural or dry gas rights in the section, or any part thereof, provided the communitized areas should not in any event exceed an area of 650 acres. The instrument then provided: *"In the event Grantee exercises such right* it is agreed * * * the royalty to be paid * * * shall be one-eighth of the amount realized by Grantee from such sale, or such market value, whichever is greater." The instrument then provided: "The payment of such royalty on gas * * * from * * * any part of 'any such communitized area' shall be only in proportion that the acreage covered by this deed * * * bears to the total communitized area" and

provided the communitization should be accomplished by Grantees' execution and filing of an instrument declaring its purposes to communitize. (Emphasis added.)

"The intention of the parties to a deed, or contract, is the paramount consideration, and such intention is to be gathered from a consideration of the entire instrument taken by its four corners." City of Stamford v. King et al., Tex.Civ.App., 144 S.W.2d 923, 927 (writ refused).

"A deed will be construed most strongly against the Grantor." Id.

We believe a construction of the instrument as a whole makes it obvious that appellee did not agree to enlarge appellants' royalty rights except, and only in the event, it exercised the right to communitize. The instrument provided: "In the event Grantee exercises such right (the right to communitize) it is agreed * * *:" A colon follows such clause and paragraphs (a) and (b) set out the conditions that should prevail in the event Grantee exercises the right to communitize. One of these conditions, the one under which appellants are claiming, is that "on gas sold at the wells the royalty shall be one-eighth of the amount realized by Grantee from such sale or such market value, whichever is greater."

We believe the clause "in the event Grantee exercises such right" (to communitize) is a condition precedent and that the enlargement of appellants' rights happened only in the event the right was exercised. Our court has held that: "A condition precedent is created by use of such words as 'on condition,' 'provided,' 'so as,' 'if it happens,' or any like appropriate words * * *." Republic Thrift Syndicate v. Atkinson, Tex.Civ.App., 21 S.W.2d 1102, 1105. Our Commission of Appeals (opinion adopted) has held "A precedent condition is one which must take place before the estate can vest or be enlarged." Spinks

et al. v. First Christian Church of Vera, 273 S.W. 815, 816. That which granted appellants' one-eighth of the amount realized by Grantee, or such market value, whichever is greater, (the enlarged estate) was only in the event appellee exercised the right to communitize, which was never exercised and hence not enlarged. Accordingly, appellants' Point 1(a) is overruled.

Since we are of the opinion that the Modification of Mineral Deed is not controlling and that the trial court was correct in holding that this suit is controlled by The Mineral Deed we must next determine if the record herein raises a genuine fact issue as to the amount and the measure of payment to appellants for the royalty under The Mineral Deed.

By brief appellants admit: "The Mineral Deed conveys unto appellee *all* of the oil, gas and other minerals *on, in and under* the said Section 39, and *eliminates all obligation on the part of appellee to drill or mine* for oil, gas or other minerals, and provides that *such mining or drilling both before and after production shall be wholly at the option of the Grantee.*" Nevertheless, appellants assert: "The court erred in holding that The Mineral Deed was a 'deed.'" (Emphasis added.)

The instrument conveyed to appellee *all* of the oil, gas and other minerals *on, in or under* the section of land, the word "all" being typed into the granting clause. It provided a valuable and substantial consideration, $6.50 an acre in 1926 in undiscovered and undeveloped territory. It eliminated all obligation on the part of appellee to ever drill or mine for oil, gas or other minerals by providing that such mining or drilling both before and after production, shall be *wholly at the option of the Grantee.* Then, it provided: "However, should oil or gas be produced * * * in paying quantities * * * then there shall be *paid* to Grantors * * * a royalty of one-eighth of the interest hereby conveyed." (Emphasis added.)

When the full context of this instrument is studied from its four corners it is clear to us that it is a deed to minerals. It did not deed a fraction of minerals with a reservation of title to another fraction, as in Watkins et ux. v. Slaughter et al., 144 Tex. 179, 189 S.W.2d 699, cited by appellants, but it deeded *all* the oil, gas and other minerals *on, in or under* the described land. Even the clause concerning the royalty to be paid in the event gas or oil was produced in paying quantities indicates all eight-eighths of the minerals were deeded. The clause said, "Then there shall be *paid* to Grantors * * * a royalty of one-eighth (⅛) of the interest hereby conveyed." We believe this could only mean eight-eighths was conveyed and that Grantors would have one-eighth of the whole paid to them when, "wholly at the option" meaning (within the uncontrolled will) of appellee oil, gas or other minerals should be produced in paying quantities. Surely, Grantor did not contract to be reconveyed a portion of what the royalty clause recognized to be "hereby conveyed." We believe The Mineral Deed has express covenants precluding the implication of covenants requiring the delivery of the gas in kind, which might otherwise be implied in the absence of express covenants.

As heretofore stated, the instrument conveyed the entire eight-eighths of all oil, gas and other minerals and eliminated all obligations on the part of Grantee and its successors to ever drill or mine for said minerals. We believe and so hold that the expression "wholly at the option of Grantee" as used in the instrument precludes *any* implied covenants to market. (Emphasis added.)

In the case of Cole Petroleum Company v. United States Gas & Oil Co., 121 Tex. 59, 41 S.W.2d 414, 86 A.L.R. 719, in a lease situation where there were covenants requiring the lease to be developed to normal state of production the Court held the clause "to develop said lease to a normal

stage of production" necessarily involved marketing. By the same reasoning, conversely the expressed covenant in The Mineral Deed here involved by eliminating *any* implied covenant or obligation to develop and produce, precludes any implied covenant to market. (Emphasis added.) Ralph et al. v. Magnolia Petroleum Company et al., Tex.Civ.App., 95 S.W.2d 222 (writ refused); Cowden v. Broderick & Calvert, Inc. et al., 137 Tex. 434, 114 S.W.2d 1166, 117 A.L.R. 61. The Ralph case involved a similar mineral deed to ours that was also in "wildcat" territory and with identical provisions eliminating the company's obligation to drill or mine for the minerals and that any mining or drilling, both before or after production, shall be wholly at the option of Grantee. It was there urged that notwithstanding such provisions there was an implied obligation on the part of the company to explore, develop and produce the oil, gas and other minerals. The Court there quoted with approval from another authority in which the Supreme Court said: "The Court * * * can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made. Before a covenant will be implied in the express terms of a contract, and in some cases in view of the customs and practices of the business to which the contract relates, it must appear therefrom that it was so clearly in the contemplation of the parties as that they deemed it unnecessary to express it, and therefore omitted to do so, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole." [95 S.W.2d 231]

The court then held the drilling or mining stipulation was valid and there could not be read into it words which would limit the rights of the company to delay drilling and mining for a reasonable time only.

In the Cowden case [137 Tex. 434, 114 S.W.2d 1171], above cited, suit was for cancellation and in the alternative for damages for failure reasonably to develop in "good faith" an oil and gas lease requiring the drilling of proper and necessary off-sets in case of production on adjoining lands and in which, "Lessor agrees that all other development shall be at the discretion of the lessee." The Supreme Court held the trial court properly sustained a general demurrer to the plaintiffs' count that there was an implied obligation to develop with reasonable diligence but that the general demurrer was not valid as against a count alleging to develop in "good faith", the court distinguishing between "discretion" and "at the option of" by saying: "The lessor, in agreeing that all other development should be at the discretion of the lessee *did not leave the development to the complete option of the lessee and his assigns, to develop or not to develop at their pleasure * * *. Discretion differs from uncontrolled will.*" (Emphasis added.) We therefore hold The Mineral Deed has express covenants precluding the implication of covenants requiring the delivery of the gas in kind, which might otherwise be implied in the absence of express covenants.

■ We believe there is no room for construction of the phrase "wholly at the option of Grantee" in The Mineral Deed here under consideration, but even if the express covenant providing mining, "both before and after production," "shall be wholly at the option of Grantee," could not be given literal meaning and effect and even if we are wrong in construing the instrument, then, in any event, by virtue of this expressed covenant, Grantee's test in marketing and payment of royalties would not be what a prudent operator would do, but whether the Grantee acted in good faith. In addition to the Cowden case it was held in Magnolia Petroleum Co. v. Page et al., Tex.Civ.App., 141 S.W.2d 691, 693 (writ refused) that the clause "the judgment of the lessee, when not fraudulently exercised,

in carrying out the purposes of this lease shall be conclusive", prevents application of the standard of a prudent operator and the Lessor must establish that the Lessee's failure to develop the premises was fraudulent. Then in King v. Swanson, 291 S.W.2d 773, 775, the Eastland Court of Civil Appeals has held in a suit for damages for failure reasonably to develop an oil and gas lease and to drill an off-set well thereon, "proof of bad judgment is not proof of bad faith" and that "to prove bad faith some improper motive must be shown." No such motive was even alleged but only that appellee in marketing did not act as a reasonably prudent operator.

The Mineral Deed here under consideration also provides: "There shall be *paid* to Grantors * * * a royalty of one-eighth * * *" (Emphasis added.)

Though not involving a mineral question our Supreme Court in State v. Tyler County State Bank et al., Tex.Com.App., 277 S.W. 625, 627, 42 A.L.R. 1347 has held: "The term 'payment' means a payment in money, * * *. Commercially speaking, the term 'payment' relates to and is restricted to a payment in money." Our Fifth Circuit Court, in an Internal Revenue tax case, P. G. Lake, Inc. v. Commissioner of Internal Revenue, 148 F.2d 898, 900 held: "The ordinary and usual meaning of 'paid' is to liquidate a liability in cash."

In the case of Texas Co. et al. v. Davis et al., 113 Tex. 321, 254 S.W. 304, 305, 255 S.W. 601, the conveyance involved in the case provided: " 'Whenever sales are being made of the product produced on the land above described, a *settlement* thereof shall be made at the end of each quarter.' " (Emphasis added.) Our Supreme Court in Hager et al. v. Stakes et al., 116 Tex. 453, 294 S.W. 835, 839, in distinguishing the leases there involved, stated the conveyances in Texas Co. v. Davis authorized "purely money payments."

The granting clause of The Mineral Deed also conveyed all of the oil, gas and other minerals *on,* in or under the described land, thus indicating ownership and title in Grantee of all oil, gas and other minerals after they are brought to the surface. We believe this is the effect of harmonizing the various parts of The Mineral Deed so that all may stand and be given due effect. In one of the most recent expressions of our Supreme Court they held in Waters v. Ellis, 158 Tex. 342, 312 S.W.2d 231, 233:

" 'There being no allegation of fraud, accident or mistake and no attempt by the parties to reform the mineral deeds, the court will give effect to the intention of the parties as expressed by the terms and provisions of the instruments. *Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement, and this purpose should not be thwarted except in the plainest case of necessary repugnance. Even where different parts of the instrument appear to be contradictory and inconsistent with each other, the court will, if possible, harmonize the parts and construe the instrument in such way that all parts may stand and will not strike down any portion unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part.'* * * *

"It is a recognized rule of construction that where there is a 'necessary repugnance' of clauses in a conveyance, the granting clause prevails over the other provisions of the deed. * * * The construction urged by respondent also runs counter to other recognized rules. *A deed will be construed to convey upon the grantee the greatest estate that the terms of the instrument will permit."* (Emphasis supplied.)

In applying the rules announced in the cases cited and quoted from we be-

lieve and so hold that appellee had the right in its uncontrolled will to drill, mine and market the gas at its complete option and that it performed its obligation to appellants, by paying to them one-eighth of what the gas sold for. We realize that in a summary judgment proceeding we cannot presume anything in favor of the movant but we also believe we have no authority from this record to presume improper motive on the part of the Texas Company in marketing the gas. The higher price they got for the one-eighth they were obligated to pay appellants the more they received for themselves. Additionally, we believe the practice is so common that we may take judicial knowledge of the fact that gas, unlike oil, is usually purchased under long-term or "life of the lease" contracts. This fact is also sworn to by the affiant making the motion for summary judgment.

We believe what we have already said in construing the instruments controls the case and justifies the judgment rendered. In the event, however, that we are wrong in construing The Mineral Deed, and only in that event we say, arguendo, that the record would require us to hold appellants have failed to provide storage to receive or pipe line connections to take any share of the gas in kind and considering gas royalty is not customarily payable or taken in kind, under the circumstances appellee had at least the implied authority by virtue of business usage and custom of the industry to sell and market all the gas for the mutual profit of the parties. Wolfe v. Texas Company, 10 Cir., 83 F.2d 425; Wolfe v. Prairie Oil & Gas Co. et al., 10 Cir., 83 F.2d 434, 435; Wolfe v. Shell Petroleum Corp., 10 Cir., 83 F.2d 438.

As heretofore stated judgment was rendered upon a motion for summary judgment. Such motion was made by J. S. Rowe who swore he was the attorney of record for the Texas Company in the case and was duly authorized to "make this affidavit" in its behalf, that he had read the motion, knew its contents and that the facts therein were true and correct.

It is true that some of the statements made in the motion are conclusions of law but some of them we believe were clearly statements of fact, could be made as such by an attorney of record in the case for the company and would have been admissible in evidence under this record. The statement is made as a fact by the affiant attorney that The Mineral Deed was executed long before the discovery and production of oil or gas in Sherman County. There are many mediums by which an attorney could inform himself to where he could testify to such a statement. He also swore as a fact that gas, unlike oil, is usually purchased under long term or "life of the lease" contracts. This fact could be well within the knowledge of an oil attorney. As such attorney he also could know as a fact that appellants failed to provide storage and pipe line connections for the marketing of any gas and that appellants have at all times accepted royalty payments tendered under its contract with Phillips Petroleum Corporation. No opposing affidavit was served nor was any pleading of any kind filed denying any of the sworn statements just related. By our rules of procedure in this state it is provided that an affidavit may be made by the party's attorney whenever it is necessary or proper for any party to a civil suit or proceeding to make an affidavit. Rule 14 Texas Rules of Civil Procedure. Of course an affidavit made on behalf of another in a judicial proceeding should disclose in the record or affidavit the affiant's authority. 2 T.J.2d Sec. 6, pp. 399; Cherryhomes v. Carter, 66 Tex. 166, 18 S.W. 443. The jurat does so in our case.

Accordingly, all points are overruled and the judgment of the trial court is in all things affirmed.