Opinion Issued October 29, 2009








 

 

 

 


 







In The

Court of Appeals

For The

First District of Texas






NO. 01-08-01007-CV

____________


ERG RESOURCES, LLC, Appellant


V.


MERLON TEXAS, INC., Appellee






On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 2008-13752






MEMORANDUM OPINION

 Appellant, ERG Resources, LLC ("ERG"), challenges the trial court's summary
judgment, rendered in favor of appellee, Merlon Texas, Inc. ("Merlon"), in ERG's
suit for breach of contract and conversion. In two issues, ERG contends that the trial
court erred in granting Merlon's summary judgment motion and in denying ERG's
summary judgment motion.

 We affirm.

Background

 In its original petition, ERG alleged that Merlon agreed to purchase oil and gas
property owned by ERG in a document titled "[As]signment and Bill of Sale" (the
"Assignment"), which the parties executed with an effective date of January 1, 2008. 
ERG asserted that the Assignment, in "express and unambiguous terms," stated that
oil produced before January 1, 2008, and contained in the storage tanks (the "Oil")
on the land subject to the agreement (the "Land"), "was the sole property of ERG." 
However, after the effective date of the Assignment, when ERG sent an invoice to
Merlon for the value of the Oil, "Merlon refused to tender the $33,072 owed to
ERG." ERG contended that by refusing to pay the $33,072, Merlon had breached its
contract with ERG and committed the tort of conversion. 

 ERG attached to its petition the Assignment, which provides,

 [ERG] . . . , herein called "Assignor," . . . does hereby grant, convey,
sell, assign, and transfer unto [Merlon] . . . , herein called "Assignee,"
the following interests:

 

 1. all of Assignor's right, title, and interest in those properties
listed on the attached Exhibit "A", including but not
limited to, any mineral interest, leases (whether one or
more) or interests created under contracts, and the lands
covered thereunder or any other oil and gas interests
applicable to the interests described in Exhibit "A" hereto, 
inclusive, without limitation, the properties and/or oil and
gas units located thereon, said interests and lands being
located in Liberty County, State of Texas, together with the
rights incident thereto, the personal property thereon,
appurtenant thereto, or used or obtained in connection with
said properties and/or oil and gas units; AND for the same
consideration stated hereinabove, Assignor does hereby
grant, convey, sell, assign, and transfer unto Assignee all
of Assignor's right, title, and interest in and to the well or
wells located upon the properties and/or oil and gas units,
or on lands pooled or unitized with any portion thereof, or
on lands located within any governmental drilling and
spacing unit which includes any portion thereof, together
with all casing, leasehold equipment, and personal property
in or on or used in connection with said well or wells,
(hereinafter collectively referred to as the "Property");

 

 2. all of Assignor's interest in the production of oil, gas, or
other minerals, inclusive of royalties, overriding royalties,
production payments, rights to take royalties in kind, or
other interests attributable to the Property;


 3. all of Assignor's interest derived from unit agreements,
orders and decisions of state and federal regulatory
authorities establishing units, joint operating agreements,
enhanced recovery and injection agreements, farmout
agreements and farmin agreements, options, drilling
agreements, exploration agreements, assignments of
operating rights, working interests, subleases and rights
above or below certain footage depths or geological
formations, to the extent same is attributable to the
Property;


 4. all of Assignor's interest in rights-of-way, easements,
servitudes and franchises acquired or used in connection
with operations for the exploration and production of oil,
gas or other minerals on or from the Property, including the
rights to permits and licenses of any nature owned, held or
operated in connection with said operations; and


 5. To the extent of the interest sold, all of Assignor's right,
title and interest in and to the oil, gas of any kind and
nature, other hydrocarbons and other minerals in, on and
produced from or allocated to the leasehold interest sold to
the Assignee from and after the Effective Date hereof.

 ERG also attached to its petition the invoice, a letter that ERG had sent to
Merlon titled "SOUTH MARTHA FINAL GAUGES Invoice No. SM-2008" and
dated January 3, 2008. In the letter, ERG wrote, "Please remit payment to ERG
Resources, L.L.C. for the following crude oil volumes on the South Martha Field
wells sold to Merlon effective 1/1/2008 . . . Total Due ERG $33,072.15."

 Merlon filed a general denial and, shortly thereafter, a summary judgment
motion, in which it asserted that "ERG transferred to Merlon not only all the personal
property associated with the Leases, but also all of ERG's rights to production, and
all the oil, gas, and other hydrocarbons in and on the properties, on the Effective
Date" and "nowhere in the Assignment is Merlon obligated to pay ERG for" the Oil. 
 In its reply and cross-motion for summary judgment, ERG asserted that prior
to January 1, 2008, ERG had extracted the Oil and "placed [it] into tanks for storage." 
ERG contended that the Oil "became ERG's personal property the moment it was
extracted from the land" and the Assignment did not convey the Oil to Merlon.

 The trial court denied ERG's summary judgment motion and granted Merlon's
summary judgment motion.

Standard of Review

 To prevail on a summary judgment motion, a movant has the burden of proving
that it is entitled to judgment as a matter of law and that there is no genuine issue of
material fact. Tex. R. Civ. P. 166a(c); Cathey v. Booth, 900 S.W.2d 339, 341 (Tex.
1995). When a defendant moves for summary judgment, it must either (1) disprove
at least one essential element of the plaintiff's cause of action or (2) plead and
conclusively establish each essential element of its affirmative defense, thereby
defeating the plaintiff's cause of action. Cathey, 900 S.W.2d at 341; Yazdchi v. Bank
One, Tex., N.A., 177 S.W.3d 399, 404 (Tex. App.--Houston [1st Dist.] 2005, pet.
denied). When both parties move for summary judgment and the trial court grants
one motion and denies the other, the reviewing court should review the summary
judgment evidence presented by both sides, determine all questions presented, and
render the judgment that the trial court should have rendered. Tex. Workers' Comp.
Comm'n v. Patient Advocates of Tex., 136 S.W.3d 643, 648 (Tex. 2004).


Summary Judgment

 In its first and second issues, ERG argues that the trial court erred in granting
Merlon's summary judgment motion and in denying ERG's summary judgment
motion because, under the Assignment, "ERG retained right, title and interest in the
[Oil]," and either the January 3, 2008, invoice created a contract for the sale of the
production requiring Merlon to pay ERG or Merlon converted the Oil for its own use.
ERG alternatively contends that the Assignment is ambiguous, precluding the trial
court from entering summary judgment for either party.

 Our primary concern in construing a written contract is to ascertain the true
intent of the parties as expressed in the instrument. Seagull Energy E & P, Inc. v.
Eland Energy, Inc., 207 S.W.3d 342, 345 (Tex. 2006); Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 662 (Tex. 2005). Usually, the intent of the parties can be
discerned from the instrument itself. ExxonMobil Corp. v. Valence Operating Co.,
174 S.W.3d 303, 312 (Tex. App.--Houston [1st Dist.] 2005, pet. denied). When an
issue regarding the construction of a contract is presented, we must examine and
consider the entire writing in an effort to harmonize and to give effect to all the
provisions of the contract so that none will be rendered meaningless. Seagull Energy
E & P, Inc., 207 S.W.3d at 345. Contract terms will be given their plain, ordinary,
and generally accepted meanings unless the contract itself shows them to be used in
a technical or different sense. Valence Operating Co., 164 S.W.3d at 662. A contract
is ambiguous only if its meaning is uncertain or if it is subject to two or more
reasonable interpretations. Seagull Energy E & P, Inc., 207 S.W.3d at 345; Edascio,
L.L.C. v. NextiraOne L.L.C., 264 S.W.3d 786, 796-97 (Tex. App.--Houston [1st
Dist.] 2008, pet. denied). If a written contract is worded in such a way that it can be
given a definite or certain legal meaning, then the contract is not ambiguous. SAS
Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005). An ambiguity does not
arise simply because the parties advance conflicting interpretations of the contract.
Tex. Farm Bureau Mut. Ins. Co. v. Sturrock, 146 S.W.3d 123, 126 (Tex. 2004). 
When the parties have entered into an unambiguous contract, the courts will enforce
the intention of the parties as written in the instrument. Sun Oil Co. (Delaware) v.
Madeley, 626 S.W.2d 726, 731 (Tex. 1981). 

 ERG asserts that, in the Assignment, it "merely conveyed its right, title and
interest to oil and gas severed from the property after January 1, 2008." ERG notes
that paragraph 5 of the Assignment provides that ERG conveyed to Merlon,

 . . . all of [ERG's] right, title and interest in and to the oil, gas of any
kind and nature, other hydrocarbons and other minerals in, on and
produced from or allocated to the leasehold interest sold to [Merlon]
from and after the Effective Date hereof.

ERG further asserts that paragraph 5 "is the only paragraph that expressly conveys
any and all rights to oil and gas produced from the leasehold" and paragraph 1 of the
Assignment only conveys its interest "derived from leases and other interests created
under contract." 

 However, paragraph 1 expressly conveys ERG's "right, title, and interest in
[the Land], . . . inclusive, without limitation, the properties and/or oil and gas units
located thereon, . . . together with . . . the personal property thereon, appurtenant
thereto, or used or obtained in connection with said properties and/or oil and gas
units." (Emphasis added). The parties agree that the Oil, which had been severed
from the Land by production, is personal property. See Humble Oil & Ref. Co. v.
West, 508 S.W.2d 812, 817 (Tex. 1974). 

 Paragraph 5 expressly conveys "[t]o the extent of the interest sold, all of
[ERG's] right, title and interest in and to the oil, gas of any kind and nature, other
hydrocarbons and other minerals in, on and produced from or allocated to the
leasehold interest sold to [Merlon] from and after the Effective Date." This language
is historically used to transfer a mineral estate, that is, the oil, gas, and other minerals
in place, not severed from the ground. Gex v. Tex. Co., 337 S.W.2d 820, 825 (Tex.
Civ. App.--Amarillo 1960, writ ref'd n.r.e.) (deed conveying "all the oil, gas and
other minerals on, in or under the described land" was held to be mineral deed, not
grant of royalty interest); Bank One, Tex., Nat'l Ass'n v. Alexander, 910 S.W.2d 530,
532 (Tex. App.--Austin 1995, writ denied) (citing 1 Howard R. Williams &
Charles J. Meyers, Oil and Gas Law § 304.4, at 475 (1994 ed.) ("[a]n instrument
that grants or reserves 'the oil, gas and other minerals in, on and under' or 'in and
under' described land, without further provisions relating to the minerals, creates a
mineral interest")); 1 Ernest E. Smith & Jacqueline L. Weaver, Texas Law of
Oil and Gas § 3.5 (1994) (noting that traditional language used to create mineral fee
is reference to "oil, gas, and other minerals in, on, and under the described land"). 
Thus, paragraph 5 gives Merlon a mineral interest--an interest in the oil and gas in
place as of the Effective Date of the Assignment. Paragraph 5 does not conflict with
paragraph 1. Paragraph 1 addresses the conveyance of all kinds of personal property,
including the Oil "thereon" the Land, while paragraph 5 addresses the conveyance of
the oil and gas in place. 

 The plain language of paragraph 1 conveys "personal property thereon . . .
used or obtained in connection with [the Land] and/or oil and gas units." (Emphasis
added). The parties agree that the Oil, which had been severed and stored in the
tanks, was personal property. Thus, the Oil was "personal property thereon" the Land
as of the effective date of the assignment and was conveyed as personal property by
paragraph 1 of the Assignment. Accordingly, we hold that ERG, in the Assignment,
unambiguously conveyed its right, title, and interest in the Oil to Merlon.

 ERG next argues that ERG and Merlon "formed a valid Article 2 contract with
regard to the Oil" because it sent to Merlon "an invoice confirming the sale [of the
Oil] and Merlon failed to object withing ten (10) days." In support of its argument,
ERG relies upon Texas Business and Commerce Code section 2.201(b), which
provides that a contract for the sale of goods is enforceable between two merchants

 if within a reasonable time a writing in confirmation of the contract and
sufficient against the sender is received and the party receiving it has
reason to know its contents, it satisfies the requirements . . . against such
party unless written notice of objection to its contents is given within ten
days after it is received.

Tex. Bus. & Com. Code Ann. § 2.201(b) (Vernon 2009). 

 However, a contract for the sale of goods can only exist when there is a
contract or agreement to pass "title from the seller to the buyer for a price." Id. §
2.106(a) (Vernon 2009). Here, ERG has not asserted that its invoice confirmed any
contract other than the Assignment, which conveyed the Oil to Merlon for the
consideration recited therein. ERG asserts that it measured the volume of the Oil on
January 1, 2008, and then sent Merlon the invoice on January 3, 2008. However, by
January 3, 2008, Merlon had already obtained title to the Oil via the Assignment. 
Because ERG did not have title to the Oil, it cannot rely on section 2.201(b) to
establish a contract for the sale of the Oil from ERG to Merlon. For the same reason,
the Oil was not subject to conversion by Merlon.

 Accordingly, we hold that the trial court did not err in granting Merlon's
summary judgment motion. Having held that the trial court did not err in granting
Merlon's summary judgment motion, we further hold that the trial court did not err
in denying ERG's cross-motion for summary judgment.

 We overrule ERG's first and second issues.

Conclusion

 We affirm the judgment of the trial court.



 


 Terry Jennings

 Justice


Panel consists of Justices Jennings, Higley, and Sharp.